## Honaker v. Honaker.

(Decided Feb. 5, 1937.)

W. A. DAUGHERTY and JOSEPH D. HARKINS for appellant.
COMBS & COMBS for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

In this action for divorce, upon submission plaintiff (here appellee) was on January 18, 1935, awarded an absolute divorce, custody of their eleven year old son, Earl Lee Honaker, and alimony in the sum of $15,000, to be paid in installments of $100 on the first day of each month, and recovery of a reasonable attorney's fee and costs.

Appellant having paid to plaintiff but $50 of the September, 1936, installment, and having failed altogether to pay the installments of alimony for the months of October, November, December, and January, appellee filed separate affidavits and motions for rules in each instance against appellant for these several months, wherein rules were granted and warrants issued against appellant for each of these defaults.

The defendant filed his verified joint response to these five rules issued against him.

In this response, the appellant undertakes to set out the trouble occurring between him and his wife; that the written agreement filed in the record for the payment to her of alimony, and admitting the allegations of the petition and awarding her the custody of their child, was obtained from him through duress; his later inability to comply with this agreement, and various other claims and excuses hereinafter referred to; and asked that the response be treated as an answer to appellee's petition and that the original judgment be modified; also, that the care and custody of the child be granted to him and that the alimony adjudged be reduced to a sum which he could pay, and the rules discharged.

To this response, plaintiff demurred, which the court upon hearing sustained, when, appellant refusing to plead or respond further, the court rendered judgment, making absolute each of the five rules and ordered appellant committed to the Floyd county jail.

To reverse this judgment, appellant prosecutes this appeal.

The one question thus presented for our review and decision is the sufficiency of appellant's response to these five rules issued against him, charging him with

contempt of court in failng to obey or comply with its judgment against him.

The facts as disclosed by the record (and in good part by the response), portraying the background of these parties' married life, which apparently was shadowed and wrecked by the repeated misconduct and lack of loyalty on the part of the appellant for his wife, appear to be as follows:

The parties were married in the state of Missouri in January, 1922. After their marriage, they lived together eleven years and became the parents of the boy whose care and custody is here involved and who is now about twelve years of age.

Some time after their marriage, the parties left their home in Missouri and moved to Kentucky, to live with appellant's mother on her large farm in Floyd county.

Upon the wife's health breaking down while there, she went back with her little son to her father's home in Missouri in order to regain her health. During her absence, it appears appellant became much enamoured with another woman, after which he seldom wrote to his wife or child, nor did he send her, as promised, any money for their maintenance or their return to Kentucky.

Later, however, despite the appellant's neglect, the wife managed to get back to Kentucky, when she instituted a suit for divorce and alimony against appellant and attached his property. Thereupon appellant promised reformation and the resumption of their married life, whereby he persuaded her to discharge her attachment against his property and dismiss the suit. This she did and returned to Missouri, he again agreeing to follow her and bring her and the boy back to their home in Kentucky.

An order was thereupon entered, dismissing that suit without prejudice.

It appears that appellant failed to keep his promises given, of reformation and to bring back his wife and child to Kentucky, but at once transferred all of his property, which had been released by appellee from attachment, to his mother and again took up his rela-

tions with this same woman of whom he had become enamoured, and it is alleged they went to the state of Ohio and entered into a bigamous marriage.

Appellee, being again left without support for herself and child in Missouri, again, unassisted by appellant, made her way back to Kentucky and in September, 1934, filed this suit for divorce and alimony.

She therein alleged the fact of their marriage, the birth of their child, the defendant's abandonment of her without cause, that he was living in adultery with another woman, that he had treated her cruelly and inhumanly, that he had ample means to support her and his child, that she had no property or income, that she was a fit person, and that the defendant was an unfit person to have the custody of their child and sought alimony in the sum of $15,000.

Further it appears that about the middle of October, 1934, following, appellant went back with appellee to her child and father's home in Missouri, when they were about to again compromise their differences and resume their married life, when this same woman appeared to interrupt their reconciliation, when he again left with her, abandoning his wife and child.

Upon reaching this decision, when thus animated, to desert his family, it appears that he entered into a written agreement with appellee, by way of a settlement and compromise of their differences and property rights, in which he admitted as true and correct all the above-recited allegations made in her petition for divorce and alimony, and therein further agreed to pay appellee $15,000 at the rate of $100 a month, to give her the custody and control of their child, and to pay her attorney's fee and costs.

This agreement was filed of record in the suit, and upon later submission of the cause thereon for judgment, it was adjudged by the court that:

"This cause * * * having been heard and considered upon all the evidence herein including the written agreement entered into by plaintiff and defendant on October 20, 1934, and heretofore filed and entered of record herein, the court is of the opinion and now adjudges that plaintiff is entitled to the relief prayed for herein and agreed upon in said writing.

"It is, therefore, adjudged by the court that plaintiff, Hazel M. Honaker, be and she is now divorced from the bonds of matrimony with the defendant, Earl L. Honaker, that she be restored to all the rights of an unmarried woman, and that she be adjudged the custody, care and control of Earl Lee Honaker, the infant child of plaintiff and defendant.

"It is further adjudged that plaintiff * * * now recover of the defendant judgment for alimony in the sum of $15,000, to be paid in installments of $100 each on the first day of each month until the same is paid in full * * *."

It appears that almost immediately after the rendition of this judgment appellant began to make partial defaults in the payment of the ordered monthly installments of alimony, for which rules and warrants of arrest were issued against him and to which he filed response, whereby he sought to evade performing his agreement, thus manifesting a persistent intent to defeat its enforcement.

These earlier defaults in alimony payment, for which rules were issued, are not really here involved, but are referred to as significant of appellant's adverse attitude towards his wife and his harassment of her by his continuous and persistent failure to pay the alimony adjudged her by the court for her and her child's support and maintenance.

Such appears to have been his continuing attitude of disobedience and contempt of the court's judgment, as evidenced by his repeatedly failing to pay the first and also these last five alimony installments here involved and due September 1, 1935, to January 1, 1936, inclusive.

It is insisted by appellee that this appeal should be dismissed upon the ground that we are without jurisdiction to entertain it, for the alleged reason that appellant is seeking to appeal from five separate orders finding him guilty of separate contempts for each of the five months referred to, wherein one was for the amount of only $50 and the others each for $100; that while these five rules were consolidated for convenience and heard together, they were yet each separate and dis-

tinct orders, and the mere fact of their consolidation was not effective to confer the right of appeal as to amount; that as appellee had the right to present and try out any one of these defaults before filing the others, her trying them together for convenience could not result in giving appellant the right to appeal, nor could these different sums be added together so as to create such right of appeal.

Upon such ground, attorney for appellee submits that appellee's motion to dismiss the appeal should be sustained.

We do not deem it necessary, however, to enter upon a discussion or an elaboration of this contention, in view of the conclusion we have reached with regard to the propriety of the court's ruling in sustaining the demurrer to appellant's response to the rule as insufficient.

Turning now our attention to the matters set up by way of excuse and defense in appellant's joint response to the five rules issued against him for his last-named defaults:

Appellant first complains that appellee, upon their marriage, urged him to unite with the Mormon Church, of which she was a member, and into which she later caused their child to be baptized. We do not perceive how such facts could have any material bearing upon the question before us.

Next appellant complains that appellee's father failed to keep some business agreement with him while he was associated with him in some business venture in Missouri. This, too, is clearly inapt, going far afield from the question here presented.

Appellant next complains as to the extent of time given by his wife to her church affairs and the money spent by her thereon. This matter, too, is clearly here not pertinent nor, conceding that she did, could it excuse his disobedience of the court's judgment.

Next he complains of his wife's failure to fit into the life of his Kentucky home, to which he removed her, and her failure to adapt herself to its environment and people. This complaint has no bearing on the question now before us and, if ever material, would have been more timely presented in the divorce suit.

Next, he complains of his wife's harassing him with suits and attachments, tying up his property and earnings, but this complaint must be considered as of no merit, when it is noted that these matters complained of related always to suits wherein by his written agreement he admitted that all the allegations therein made were true.

Next, in his response he complains that when it became evident to him that plaintiff and he could not live together in harmony, and that it was impossible for him while living with her, to "carry on" as was necessary to make a living, he met a young Kentucky woman, a neighbor, who was congenial and sympathetic with him in his "carrying on" (and with whom it is manifest he was "carrying on" altogether too much), whom he had married while his wife was in Missouri, where she had gone after leaving him. However, while he does not further disclose in his response the identity of this lately discovered "soul mate," it clearly appears that she is the same woman who, when he and his wife were about to become reconciled at her home in Missouri, appeared on the scene and caused him to there abandon and desert his family. Certainly such cited instance of philandering and wanton conduct on his part, here pleaded as justifying his abandonment of his wife and son and as ground for modification of his agreement, was not calculated to evoke from the chancellor any condonement of appellant's faliure to comply with his order that he make the agreed monthly contributions out of his estate or earnings to the support of his family nor here influence the court, upon such grounds, to entertain with any sympathy his plea of inability in his present status, with the new marital obligations assumed, to pay the ordered alimony installments to his deserted wife and child, after having disabled himself to pay by recklessly and wantonly incurring new obligations and expenses, by taking on, through a bigamous marriage, the support of another wife and family.

Upon such point did we say in the case of Roper v. Roper, 242 Ky. 658, 47 S. W. (2d) 517, 519:

"Failure to comply with a decree is prima facie evidence of contempt; hence the burden is on the divorced husband to show his inability, and that is a question of fact to be determined by all the evi-

dence. It is the general rule that, where a husband has defaulted in the payments ordered by the court to be made because he is unable to do so, he will not be adjudged in contempt for disobedience unless he is in fault or had voluntarily created his disability. However, where an alleged contemnor has brought about the condition or he is able, actually or potentially, to obey the order or decree, he cannot avail himself of a plea of inability as a defense to a charge of contempt. * * *

"In Hembree v. Hembree, supra [208 Ky. 658, 271 S. W. 1100, 1101], a delinquent father responded to a rule that he had no funds or property, nor had he ever had any, with which to make monthly payments for the support of his child as adjudged, and by reason thereof could not obey the decree. It was said by this court: '* * * To have purged himself of contempt for his failure to comply with the court's orders, he must have made it clearly appear, not only that he was unable to comply therewith, but also that his inability was not caused by his own neglect or misconduct.' "

Next, the response sets out that while the written agreement had with his wife, which was filed of record and later adopted and made a part of the learned chancellor's judgment, did not in its terms provide for any contingencies, but was unconditional as a promise to pay her monthly installments of $100 until the $15,000 was paid, he yet at the time told appellee that he could not make such payments under the then existing business conditions, and she agreed that if he would sign the agreement, she would accept such amounts as he could reasonably pay her, in the event he could not make full monthly payments.

Appellant does not claim that he signed the writing in ignorance of its contents or that he thought it contained any such condition or contingency as to its payment to his wife, but only that he feared she, angered by his admitted misconduct, would have him arrested if he refused to sign it.

Having admitted by the agreement that all the allegations were true, appellant is hardly in a position to complain of his fear of his wife having him arrested.

upon adequate grounds given her therefor as entitling him to a modification of the order, nor is he now to be heard to complain that his apprehension of being called on by his arrest to retributably account for his mistreatment of her constituted duress on the part of the wife in causing him to sign the agreement.

While it is true that a judgment entered pursuant to an agreement of the parties may be attacked on the grounds of fraud or duress, when charged in the pleadings and same are sustained by the evidence, it is sufficient answer to this contention when here made to say that such claim of duress we conceive is in no wise sustained by the evidence.

Further the response here before us sets out that upon the separation of himself and wife, he turned over to her household furnishings worth $2,000 and paid her attorney's fee. From this statement alone the inference would be that he then gave the furniture to her and that she was in possession of it at the time of the court's judgment awarding to her the alimony, in the payment of which the appellant has defaulted.

A like claim was made in the case of Staton v. Staton, 164 Ky. 688, 176 S. W. 21, 22, L. R. A. 1915F, 820, where, in a petition to vacate for fraud a judgment for alimony, the husband alleged that he was entitled to credit for personal property and rents received by the wife. There we held that the husband was not entitled to relief, since, if the wife was in possession of the property when the judgment was rendered, it was to be presumed that the court intended that she should retain it, and if she acquired possession thereafter, the husband had a remedy at law to recover it.

Further, the appellant by his response urges that by reason of the change of conditions in his earnings, he is now unable to carry out his agreement with plaintiff to pay her the monthly installments of alimony. However, he does not, in support of such statements, set out what are his present earnings, nor how much is now required to support his new family. So far as his plea goes, it may well be inferred that he has voluntarily impoverished himself by new personal indulgences, by taking on the support of an extravagant wife and children, which now make it difficult for him to

care for the appellee, his first wife, and their child. The response is in such respect insufficient to show an excusing inability to pay, as it merely makes certain allegations unaccompanied by any statement of facts evidencing their truth.

In the case of Hembree v. Hembree, 208 Ky. 658, 271 S. W. 1100, there, as here, the appellant having failed to make payment of more than two months of alimony to his wife and to respond to a rule issued against him, he was committed to jail for contempt. Later, he filed answer, alleging that at the time of his commitment to jail, "he had no funds and no property wherewith to comply with the aforesaid order of the court herein; and that he has not since received any funds or property wherewith he could comply therewith; * * * and he says that he is totally unable, by reason of his lack of money and property, to comply with said order or to pay to the plaintiff the sum which the court ordered him to pay."

In approving the lower court's sustaining a demurrer to this answer, we said:

"It is well settled that in awarding money for the maintenance of his children the court may take into consideration the father's ability to labor and earn money and make an award based thereon, even though the father owns no property. Sebastian v. Rose, 135 Ky. 197, 122 S. W. 120.

"The mere fact, then, that a father has no money or property at a particular time is no excuse for his persistent refusal or failure to support his children, and, even if appellant had no money or property upon the day of his commitment and since, that fact is no excuse for his continuous failure for more than two months theretofore to make any payment whatever on the award for the support of his child. To have purged himself of contempt for his failure to comply with the court's orders he must have made it clearly appear, not only that he was unable to comply therewith, but also that his inability was not caused by his own neglect or misconduct. Reed v. Reed, 74 S. W. 207, 24 Ky. Law Rep. 2438; Rudd v. Rudd, supra [184 Ky. 400, 214 S. W. 791]; Croft v. Croft, 77 Wash. 620, 138 P. 6; 13 C. P. 19."

See, also, in accord therewith, Staton v. Staton, supra, where upon this question we said:

"Finally it is alleged in the petition that since the judgment of divorce the plaintiff had married another woman, and had thereby assumed additional obligations, and that the situation of the parties had been thereby changed, and for that reason the allowance for alimony should be reduced. While this is a matter to be presented to the chancellor below in any application that might be made to modify the alimony allowance, we do not deem it inappropriate to say that such a plea would hardly appeal to the conscience of a chancellor.

"A divorced husband against whom an allowance for alimony has been made, who after the judgment of divorce voluntarily assumes such additional obligations, ought not to be heard to urge that as a reason why he should be relieved to any extent from such allowance."

Further, an agreement as to alimony, carried into the judgment, cannot be changed by the court after the term the judgment was entered, unless the agreement provided for modification or the court retains control of the action. Boehmer v. Boehmer, 259 Ky. 69, 82 S. W. (2d) 199. Renick v. Renick, 247 Ky. 628, 57 S. W. (2d) 663.

We are therefore, after a careful consideration of the objections urged by appellant, led to conclude for the reasons hereinabove stated, that the learned chancellor correctly sustained appellee's demurrer to the joint response of appellant, and therefore his judgment is affirmed.