## Turner v. Ewald et al.

April 28, 1942.

834

Wm. Marshall Bullitt and Thomas W. Bullitt for appellant.

Edward P. Humphrey and Humphrey & Taylor for appellees.

OPINION OF THE COURT BY JUDGE REES—Reversing.

This is an appeal from a supplemental judgment in a divorce proceeding adjudging that appellant, Mildred C. Ewald Turner, by reason of her remarriage, had abandoned and relinquished all her rights against appellee Louis Phillip Ewald, her former husband, in the original judgment rendered July 21, 1932, in which appellant was granted a divorce from appellee and was given custody of their infant son, Louis Phillip Ewald, III, then twelve years of age. The case involves the construction of certain contracts settling their property rights entered into by appellant and appellee before the divorce decree was rendered, of a declaratory judgment declaring the rights of the parties under one of the contracts, and of the divorce decree itself. The contracts and the declaratory judgment were incorporated in the divorce decree, and adopted as a part thereof.

Appellant and appellee were married August 17, 1917, and they have one child, Louis Phillip Ewald, III, born January 6, 1920. Appellee's father, Louis Phillip Ewald, Sr., died July 21, 1909, leaving a large estate to

the Fidelity Trust Company of Louisville, Kentucky, in trust for his three children. His will provided that if his son, Louis Phillip Ewald, should attain the age of thirty years the trustee should turn over to him one-half of the corpus of his share of the estate and hold the other half in trust for him during his life, with remainder to his descendants, if any, otherwise to his surviving brother and sister or their descendants per stirpes. When appellee became thirty years of age he received approximately $600,000 as one-half of his trust estate, and the Fidelity Trust Company, now the Fidelity & Columbia Trust Company, held the remaining one-half in trust to pay him the income therefrom for life, with remainder to his descendants. It appears that a rift in the marriage relationship occurred in 1928, and appellant and appellee lived apart for a short time. On December 4, 1928, they entered into a contract by the terms of which appellant was to be paid out of the income from the trust estate the sum of $1,000 per month. Appellee executed and delivered to appellant the following written assignment:

"In consideration of the marriage relation between L. P. Ewald and Mildred C. Ewald, the undersigned, L. P. Ewald, hereby assigns to Mildred C. Ewald, One Thousand ($1000.00) Dollars, per month as a first charge against the income derived from his interest in the estate of L. P. Ewald, held by the Fidelity & Columbia Trust Company of Louisville, Kentucky, in trust, and hereby directs said Fidelity & Columbia Trust Company to pay Mildred C. Ewald One Thousand ($1000.00) Dollars per month from said income before paying any other sums out of the net income from said estate. This assignment is irrevocable and shall remain a first charge on my estate until my death.

"(Signed)    L. P. Ewald."

Mr. and Mrs. Ewald separated in 1930. The trustee paid Mrs. Ewald the $1,000 per month from December 4, 1928, until September 25, 1931, when it ceased making the payments after receiving the following written notice from Mr. Ewald:

"I have decided to discontinue the monthly allowance which I have been giving my wife, Mrs. Mildred C. Ewald. You have been paying her $1000 a month under a contract which I made with her;

However, due to circumstances since the making of said contract, I deem said contract no longer in effect on account of failure of consideration. I, therefore, direct you to make no further payments after the next allowance of September 25.

"I take this means of notifying you and shall appreciate your letting her know as soon as possible."

Thereupon the Fidelity & Columbia Trust Company filed an action under the Declaratory Judgment Act, Civil Code of Practice, Section 639a—1 et seq., against Mr. and Mrs. Ewald in which it prayed for a declaration of their rights and for a determination whether it should continue to pay to Mrs. Ewald the $1,000 per month. Mrs. Ewald filed an answer and counterclaim in which she prayed for a binding declaration of her rights against the trust company and for a judgment against it on her counterclaim for the past due $1,000 October installment, and that she be adjudged entitled to all future $1,000 monthly installments during the life of Mr. Ewald. Later she filed an amended answer and cross-petition against Mr. Ewald and an amended counterclaim against the trust company in which she alleged that for a valuable consideration Mr. Ewald had given, sold, and irrevocably assigned to her so much of his beneficial interest in the estate of his father as would certainly produce income sufficient to pay to her for and during her natural life the sum of $1,000 a month and also to pay all the premiums necessary to keep in full force and effect certain life insurance policies of the face value of $63,000 then on the life of Mr. Ewald, and she prayed that she be adjudged the beneficial owner of so much of her husband's interest in his father's estate as would certainly produce sufficient income for these purposes. Mr. Ewald filed an answer and cross-petition and later an amended answer, counterclaim, and cross-petition in which he asked the court to adjudge that the contract between him and Mildred C. Ewald, dated December 4, 1928, be canceled by reason of the failure of consideration, and that the trust company be directed to discontinue all payments to Mildred C. Ewald under the contract. Proof was heard and, upon submission of the case, the chancellor entered a judgment declaring the rights of the parties substantially in accordance with the prayer of Mrs. Ewald's answer, counterclaim, and cross-petition as

amended. The pertinent parts of the declaratory judgment read:

"It is now ordered, adjudged, and decreed as follows, to-wit:

"1. That for a valuable consideration, the defendant, L. P. Ewald heretofore gave, sold, irrevocably assigned, and delivered, to the defendant Mildred C. Ewald, so much of his beneficial interest in the estate of his father, L. P. Ewald (now held by the Fidelity & Columbia Trust Company, as Trustee under the will of L. P. Ewald, deceased, recorded in Will Book 29, Page 519, in the office of the Clerk of the Jefferson County Court), as is described in the Fourth paragraph of said will, and as will certainly produce income sufficient (a) to pay to the defendant Mildred C. Ewald, for and during her natural life, the sum of $1,000 per month, and (b) to pay all the premiums necessary to keep in full force and effect life insurance policies of the face value of $63,000 now on the life of the defendant L. P. Ewald, which are now, or which may hereafter be made payable to Mildred C. Ewald as beneficiary, or assigned by him to the Fidelity & Columbia Trust Company, and Mildred C. Ewald as trustee, for the benefit of said Mildred C. Ewald and/or L. P. Ewald, Jr., the son of the defendants, L. P. Ewald and Mildred C. Ewald;

"That the defendant Mildred C. Ewald is the beneficial owner of so much of the trust estate created by the said Fourth paragraph of the said will of L. P. Ewald, deceased (and now held by the Fidelity & Columbia Trust Company, as trustee under said will for the use and benefit of the defendant L. P. Ewald) as will certainly produce income sufficient (a) to pay to the defendant Mildred C. Ewald, for and during her natural life, and during the existence of said trust the sum of $1,000 per month, and (b) to pay all the premiums necessary to keep in full force and effect life insurance policies of the face value of $63,000 now on the life of the defendant L. P. Ewald, which are now, or which may hereafter be, made payable to Mildred C. Ewald as beneficiary, or assigned by him to the Fidelity & Columbia Trust Company and Mildred C. Ewald, as trustee, for the benefit of said Mildred C. Ewald and/or L. P.

Ewald, Jr., the son of the said defendants, Mildred C. Ewald and L. P. Ewald;

"That the Fidelity & Columbia Trust Company, as trustee under the will of L. P. Ewald, deceased, shall pay from said trust estate in its hands (a) the sum of $1,000 per month to the defendant Mildred C. Ewald, on the 25th day of each and every month during her natural life and during the existence of said trust, and (b) all premiums necessary to keep in full force and effect all life insurance policies of the face value of $63,000 now on the life of L. P. Ewald, which are now, or may hereafter be, made payable to Mildred C. Ewald as beneficiary, or assigned by him to the Fidelity & Columbia Trust Company and Mildred C. Ewald, as Trustee for the benefit of Mildred C. Ewald and/or L. P. Ewald, Jr., son of the defendants L. P. Ewald and Mildred C. Ewald."

Subsequent to the entry of this judgment, Mr. and Mrs. Ewald entered into a written contract which stated they desired "to settle all property rights between them" and if and when Mrs. Ewald should file suit for divorce and a judgment should be entered therein divorcing them from the bonds of matrimony then the property rights between them should, after such divorce, be settled upon the terms thereinafter set out. The contract contained these provisions:

"2. (a) Mr. Ewald hereby ratifies, approves and confirms the final judgment entered on July 21st, 1932, by the Jefferson Circuit Court, Chancery Branch, Second Division, in the said suit therein entitled Fidelity & Columbia Trust Company, Executor and Trustee under the Will of L. P. Ewald, deceased, Plaintiff, v. L. P. Ewald, Jr., and Mildred C. Ewald, Defendants, No. 215848, in said Jefferson Circuit Court.

"Mr. Ewald hereby waives and surrenders any right to appeal from the said judgment of the Jefferson Circuit Court; and he also waives and surrenders any right under Ky. Stat. Sec. 2121, (a) to have restored to him any property obtained by Mrs. Ewald from or through Mr. Ewald before or during the marriage, in consideration thereof, and especially (b) to require any restoration of any rights ob-

tained by Mrs. Ewald under the said final judgment of the Jefferson Circuit Court.

"(b) Mr. Ewald has $63,000.00, face value, life insurance upon his life, represented by policies of the dates and serial numbers, in the Companies, for the amounts, and for the annual premiums (aggregating $1,528.22) as follows, to-wit:

"December 3, 1917, No. 47301A, Western & Southern Life Insurance Company, $1,000.00; $41.64.

"November 22, 1926, No. 1274890, Mutual Benefit Life Insurance Company, $40,000; $915.

"September 5, 1930, No. 2280852, Northwestern Mutual Life Insurance Company, $20,000; $521.80.

"April 8, 1931, No. P679516, Aetna Life Insurance Company of Hartford, Conn., $2,000; $49.78.

"By proper instruments to be executed by him, Mr. Ewald will assign the said policies to, and make them payable to, the Fidelity and Mrs. Ewald, in trust, for the uses and purposes as follows, to-wit:

"(1) The Fidelity and Mrs. Ewald shall collect the entire proceeds of all of the said policies of life insurance, which proceeds shall then be paid over to the Fidelity to be held and/or disposed of as hereinafter provided.

"(2) If both Mrs. Ewald and her son L. P. Ewald, Jr., shall die before Mr. Ewald dies, the entire proceeds of the policies shall be paid to the persons entitled thereto under the Kentucky Statutes of Descent and Distribution, as they now exist in the case of a person who dies intestate as to personal property, as provided in Ky. Stat. Sec. 1403.

"(3) If Mrs. Ewald shall die before Mr. Ewald dies, but L. P. Ewald, Jr., survives his father, then upon the death of Mr. Ewald, the entire proceeds of all of the policies shall be paid to L. P. Ewald, Jr.

"(4) If Mrs. Ewald shall survive Mr. Ewald, the entire proceeds of all of the policies shall be paid to Mrs. Ewald absolutely. * * *

"3. Mr. Ewald has this day paid to the Fidelity, in trust, the sum of $143,500 in cash (or in securities mutually acceptable to the Fidelity and to

Mrs. Ewald as equivalent in value to $143,500), which cash and/or securities are to be by the Fidelity held, managed, sold, re-sold, invested and re-invested, upon the following trust, to-wit:

"To pay the entire net income therefrom to Mr. Ewald for and during the term of his natural life; but if Mrs. Ewald shall died before Mr. Ewald, the trust shall automatically terminate, and the Fidelity shall pay the entire fund to Mr. Ewald.

"If Mrs. Ewald shall survive Mr. Ewald, the Fidelity shall pay to Mrs. Ewald, from and after the date of Mr. Ewald's death, and for and during the term of Mrs. Ewald's life, the entire net income from said fund.

"At the death of Mrs. Ewald (if she shall survive Mr. Ewald), the entire fund shall be paid over by the Fidelity (a) in accordance with the directions contained in any will which Mr. Ewald may have left, or (b) in default of his exercise of such power, then to the persons entitled thereto under the Kentucky Statutes of Descent and Distribution, as they now exist in the case of a person who dies intestate as to personal property, as provided in Ky. Stat. Sec. 1403.

"Mr. Ewald may, from time to time, substitute for all, or any part, of the said $143,500 Trust Fund, life insurance policies on his life of a face value of $143,500 (or for a face value of such lesser amount as will, when added to the then value of the securities not so substituted, aggregate $143,500), payable to the Fidelity and/or Mrs. Ewald, provided, however, (1) the Company or companies issuing such policy or policies, and the form of the policies, are satisfactory to Mrs. Ewald, (2) Mr. Ewald makes provision satisfactory to Mrs. Ewald for certainly securing the future payment of all future premiums on the said policy or policies during Mr. Ewald's life, and (3) the policies are made so payable, or are so assigned, that the proceeds thereof, upon the death of Mr. Ewald, will be legally and effectively held by the Fidelity for the purposes, and upon the trusts, herein provided as to the $143,500 fund in Paragraph 3 of this Agreement.

"During the existence of this trust, Mr. Ewald

shall have the right, from time to time, on the written approval of the Fidelity and Mrs. Ewald, to substitute other securities of equal value for those, or any part thereof, then held by the Fidelity; and, after the death of Mr. Ewald, the Fidelity shall not sell, purchase or invest or re-invest any part of the trust estate without the written approval of Mrs. Ewald.

"4. Mr. Ewald will pay, and hereby binds himself, his heirs, executors, administrators and assigns to pay, to Mrs. Ewald the sum of $43,500 upon the death of Mr. Ewald (in the event that Mrs. Ewald survives Mr. Ewald). This obligation is absolute and is a debt (without interest), owing by Mr. Ewald to Mrs. Ewald, to be paid to her at his death, in the event she survives him, and shall be, and is, a first and preferred charge against his estate at the time of his death. It is not in any sense in the nature of a legacy, and it is not to participate in his estate pro rata with any legatees or devisees under his will, but it is an absolute and unconditional promise on the part of Mr. Ewald to pay said sum of $43,500 to Mrs. Ewald upon his death, if she is then living."

In clause 5 of the contract Mr. Ewald agreed to pay to Mrs. Ewald the sum of $1,250 annually, beginning September 1, 1932, for the education of their son, Louis Phillip Ewald, III, these payments to cease at the death of Mrs. Ewald or when their son reached the age of 21 years. In clause 6 Mr. Ewald agreed to execute and deliver to Mrs. Ewald such instruments as might be necessary to vest complete title in her to a Packard automobile, and to deliver to her all of the furniture, fixtures, furnishings, and personal belongings described in a schedule attached to the contract. Clause 7 of the contract reads in part:

"Mrs. Ewald hereby waives any and all claims which she now has, or may have, against Mr. Ewald for alimony or for her support and maintenance, or for the support, education and maintenance of their said son, L. P. Ewald, Jr. The payments in this Agreement provided to be made to Mrs. Ewald are to cover her support and maintenance, and the support, education and maintenance of the said son, and she hereby waives any other claims of any character.

"Mrs. Ewald will sign and acknowledge any deed or other papers which Mr. Ewald may request her to sign, and which will not impose any personal liability upon her, affecting any real property that he may now or hereafter own, so long as they remain husband and wife; and Mr. Ewald will sign and acknowledge any deed or other papers which Mrs. Ewald may request him to sign, and which will not impose any personal liability upon him, affecting any real property that she may now or hereafter own, so long as they remain husband and wife.

"This agreement is in full settlement, satisfaction and compromise of any and all claims which either Mr. or Mrs. Ewald may hold against the other; and in the event of the death of either after this Agreement becomes operative, and while they are still husband and wife, the one surviving hereby waives all claims to curtesy, dower, homestead or distributable share in either the real or personal estate owned by the other."

Mrs. Ewald did file a suit against Mr. Ewald for divorce, and on July 21, 1932, a decree was entered divorcing them from the bonds of matrimony and giving to Mrs. Ewald the custody of their infant son. Paragraph 5 of the divorce decree recites:

"That the plaintiff has not sufficient estate of her own; that it appeared by the testimony that the parties hereto have entered into an Agreement settling their respective property rights which Agreement reads and is in words and figures as follows, to-wit."

The agreement is then set out in full, and paragraph 6 ratifies and approves and confirms it and adopts it as a part of the divorce decree in so far as " (1) the property rights of the parties are concerned, and (2) the defendant is required to make provision out of his estate for the education, support and maintenance of their said child." Paragraph 7 adopts as a part of the divorce decree the final decree in the declaratory judgment case, and that decree is set out in full. Paragraphs 8 and 9 of the divorce decree read:

" (8) That the provisions of this decree, as hereinbefore set out, have duly restored to each of the parties respectively, such property, not disposed

of at the commencement of this action, as either obtained from or through the other, before or during the marriage in consideration thereof; and that there is no other property which either party shall restore to the other which was obtained from or through the other before or during the marriage in consideration thereof.

"(9) That this cause be, and hereby it is, retained upon the docket, and the Court reserves jurisdiction of this cause for the purpose of making such other and further orders from time to time, as may be necessary or proper (1) in connection with the custody, control, maintenance and education of the said child and (2) to carry out the terms of this decree."

Extensive quotations from the contract between the parties, the final decree in the declaratory judgment case, and the divorce decree have been necessary in order to enable the reader to understand the issues involved.

In 1932 Mrs. Ewald moved to New York, and in January, 1934, she married Mr. Huntington M. Turner. On January 24, 1936, Mr. Ewald filed in the divorce suit in which the decree of July 21, 1932, had been entered a pleading styled "Amended and Supplemental Answer and Counterclaim," wherein he set forth Mrs. Ewald's marriage to Mr. Turner, and prayed that the court "revise and reduce to such amount as may be meet and proper under the circumstances the allowance of $1,000.00 per month made to the plaintiff, and that such other revision be made in said judgment herein as may be proper." This pleading was based on the theory that the decree in the declaratory judgment case was not final for all purposes because it was provided in clause 6 thereof "that this cause be and hereby it is retained upon the docket and the Court reserves jurisdiction for the purpose of making from time to time such other and further orders as may be necessary for the purpose of effectuating and carrying out the terms of this decree," and that the divorce decree was not a final adjudication between the parties of their property rights but was merely a judgment for alimony in installments for the maintenance and support of Mrs. Ewald and subject to revision at any time upon a showing of a change of conditions. The chancellor adopted Mr. Ewald's theory of the case, and on April 27, 1939, entered a supplemental

judgment in the divorce action vacating all the provisions of the divorce judgment of July 21, 1932, except so much thereof as granted a divorce. The supplemental judgment reads in part:

> "The Court being sufficiently advised, it is adjudged that Mildred Cozzens Ewald Turner, by her remarriage to Huntington M. Turner, abandoned and relinquished all her rights against her former husband, the defendant, Louis Phillip Ewald, Jr., under the original judgment herein and the contract between the plaintiff and the defendant, therein set out, for payment of alimony, maintenance and in every other respect except so far as a divorce from the bonds of matrimony is concerned.

> "It is further adjudged that neither the defendant, Louis Phillip Ewald, Jr., nor the defendant, Fidelity & Columbia Trust Company, Trustee, is required to hereafter carry out any of the provisions of said judgment abandoned and relinquished by the plaintiff as aforesaid.

> "It is ordered and adjudged by the court that the Fidelity & Columbia Trust Company, Trustee, shall not pay any further sums whatever to the plaintiff, Mildred Cozzens Ewald Turner under the original judgment herein or at all."

The chancellor in a written opinion, which is a part of the record, reviewed the proceedings in the declaratory judgment action and the divorce action and the supplemental proceedings in the divorce action, and then stated that a woman when she remarries should look to the man who is her husband for support and that, in his opinion, Mrs. Ewald's marriage to Mr. Turner terminated the judgment and contract regarding the payment of alimony to her because of the changed status and condition. If the chancellor's assumption that the divorce decree was merely a decree for alimony in installments for the maintenance and support of Mrs. Ewald and not a final adjudication between the parties of their property rights, then it may be conceded that his conclusion is correct. The general rule is that a woman who, after her divorce, marries one capable of furnishing her suitable support relinquishes all her rights against her divorced husband for maintenance and support thereafter. Boehmer v. Boehmer, 259 Ky. 69, 82 S. W. (2d) 199; Lyon v.

Lyon, 243 Ky. 236, 47 S. W. (2d) 1072; Evans v. Evans, 229 Ky. 21, 16 S. W. (2d) 485. This rule has no application where the divorce decree awards to the wife alimony in a gross sum or where the decree is in settlement of the property rights of the parties. In this jurisdiction a lump-sum award in lieu of a periodical allowance is favored where the husband owns sufficient property to permit such a settlement of alimony claims fairly to both parties. Williamson v. Williamson, 243 Ky. 544, 49 S. W. (2d) 337; Lyon v. Lyon, 243 Ky. 236, 47 S. W. (2d) 1072; Hooe v. Hooe, 122 Ky. 590, 92 S. W. 317, 5 L. R. A., N. S., 729, 13 Ann. Cas. 214; Irwin v. Irwin, 107 Ky. 24, 52 S. W. 927; Gooding v. Gooding, 104 Ky. 755, 47 S. W. 1090, 48 S. W. 432. A lump-sum award to the wife is authorized by Section 2122 of the Kentucky Statutes, which reads:

> "If the wife have not sufficient estate of her own she may, on a divorce obtained by her, have such allowance out of that of her husband as shall be deemed equitable, and be restored to the name she bore before marriage, if she desires it."

The proportion of the husband's estate which should be awarded the wife, where an allowance in gross is made, is not determined by any hard and fast rule, but the amount allowed is controlled by the facts and circumstances of the particular case and, as said in Kelly v. Kelly, 183 Ky. 172, 209 S. W. 335, 339, "the adjudicated cases show that the allowance has varied from one-fifth to one-half of the husband's estate in cases where divorce has been granted." In the present case the divorce decree is a consent decree based on an agreement between the parties, and the amount of the allowance is not a bone of contention and has no bearing on the case except as it may throw some light on the nature of the award. The controversy narrows to this: Was the award in the nature of a lump-sum settlement and a finality, or was it merely an allowance of alimony for the maintenance and support of the wife which could be modified later by the court because of changed conditions? A thorough consideration of the two contracts entered into between Mr. and Mrs. Ewald, one before the final separation and one just before the divorce decree was entered, and of the decree in the declaratory judgment action which was accepted and approved by Mr. Ewald, leads to the inescapable conclusion that the parties had in con-

templation a final and complete settlement of their property rights. Mr. Ewald was a man of great wealth, with an income of more than $50,000 annually, and it is unlikely that Mrs. Ewald would have surrendered her rights in consideration of a periodical allowance, though substantial, which might be terminated at any time by the death of either. By the writing signed by Mr. Ewald on December 4, 1928, he assigned to his wife $1,000 per month as a first charge against the income derived from the trust estate held by the Fidelity & Columbia Trust Company. The writing concluded: ''This assignment is irrevocable and shall remain a first charge against my estate until my death.'' He owned only a life interest in this trust estate, and could assign no interest therein beyond the date of his death. When a dispute arose as to the meaning and effect of this assignment, a declaratory judgment suit was filed and issue was joined by the three litigants, Mr. and Mrs. Ewald and the trustee under the will of L. P. Ewald, Sr. Proof was heard and a final decree was rendered declaring that the assignment by Mr. Ewald of $1,000 per month out of the income from the trust estate was irrevocable and that Mrs. Ewald was the beneficial owner of so much of the trust estate as would certainly produce income sufficient (a) to pay to her for and during her natural life and during the existence of the trust the sum of $1,000 per month, and (b) to pay all the premiums necessary to keep in full force and effect life insurance policies of the face value of $63,000 then on the life of Mr. Ewald, and in the event of her death before the death of Mr. Ewald for the benefit of their son.

This judgment was not appealed from within the time prescribed by Section 639a—5 of the Civil Code of Practice, and became final and binding upon the parties. The provision in the judgment for retaining the cause on the docket was solely ''for the purpose of effectuating and carrying out the terms'' of the judgment which was a final and binding declaration of the rights of the parties under the contract of December, 1928. After this judgment was rendered, Mr. and Mrs. Ewald entered into a settlement agreement which was later incorporated in the divorce decree. It was recited in this agreement that they desired to settle all property rights between them, and Mr. Ewald ratified, approved, and confirmed the final judgment in the declaratory judgment suit and waived any right to appeal therefrom. He also waived

any right under Section 2121 of the Kentucky Statutes to have restored to him any property obtained by Mrs. Ewald before or during marriage, in consideration thereof, and he agreed especially not to require restoration of any rights obtained by Mrs. Ewald under the judgment in the declaratory judgment suit. In the settlement agreement it was provided that upon the death of Mr. Ewald the sum of $43,500 should be paid to Mrs. Ewald out of his estate, and the agreement stated that this was ''a debt (without interest), owing by Mr. Ewald to Mrs. Ewald, to be paid to her at his death, in the event she survives him, and shall be, and is, a first and preferred charge against his estate at the time of his death,'' and was ''an absolute and unconditional promise on the part of Mr. Ewald to pay said sum of $43,500 to Mrs. Ewald upon his death, if she is then living.'' Mrs. Ewald waived all claims for alimony or for her support and maintenance and all claims to dower in any property owned by Mr. Ewald. The terms of the agreement are plain and unambiguous, and it was clearly the intention of the parties to make a final settlement of their property rights and to vest certain rights in Mrs. Ewald. The contract of December, 1928, the decree in the declaratory judgment suit declaring the rights of the parties under that contract, and the settlement agreement, which approved and adopted that declaration, vested in her an equitable interest in the corpus of the trust estate which Mr. Ewald had a right to assign to her for any period not extending beyond his life. Commonwealth v. Sutcliffe, 283 Ky. 274, 140 S. W. (2d) 1028; Blair v. Commissioner, 300 U. S. 5, 57 S. Ct. 330, 81 L. Ed. 465. There also was vested in Mrs. Ewald the right to the proceeds of the insurance policies of the face amount of $63,000 if she survived Mr. Ewald, and also at his death the right to the income for life from the special trust of $143,500 and to $43,500 in cash. This agreement was approved by the court in the divorce action and was incorporated in and adopted as a part of the divorce judgment in so far as the property rights of the parties were concerned. The contracts between the parties, the decree in the declaratory judgment suit, and the divorce decree all used plain language indicating a purpose to make a final settlement and disposition of property rights. In the divorce decree the court reserved jurisdiction of the cause for the purpose of making such other and further orders from time to time as might be necessary or proper (1) in

connection with the custody, control, maintenance, and education of the child, and (2) to carry out the terms of the decree, but jurisdiction for the purpose of modifying the decree in so far as property rights were concerned was not reserved. In Keach v. Keach, 217 Ky. 723, 290 S. W. 708, 709, where there was a consent judgment for alimony, the court said:

"The rule in this jurisdiction is that a judgment for alimony in a lump sum becomes final after adjournment of the term of court at which it is rendered, and cannot thereafter be modified unless the court in its judgment retains the right to do so. * * * It will be observed, however, that in this case the parties agreed and settled their property rights and further agreed that such settlement was to be entered as the judgment of the court, and that this was done. It will further be observed that the parties had in mind a lump sum of $15,000, which was to be paid appellee at the death of her husband, if she survived him; the interest on this sum being almost equivalent to the monthly payments, though the payments should cease upon her death. There is no intimation that this settlement was not fairly made and voluntarily entered into by both parties, with the full knowledge of their mutual property rights. It is not claimed that there was any mistake in the agreement, or that it was contemplated for any subsequent change to be made therein, or that the judgment differed therefrom in any respect. In a long line of cases we have held that such agreements are in line with public policy, and will be upheld and enforced by this court."

In answer to the argument that the decree was for alimony in installments and could therefore be modified at a subsequent term of court, it was said:

"Certainly the validity of the original agreement is in no wise impaired by the verity imparted to it in being made a judgment of the court and unless the settlement itself could be attacked in some of the ways mentioned, supra, the judgment ought not to be disturbed after the term at which it was rendered; indeed the agreed or consent judgment substitutes the contract of the parties for the conclusions of the chancellor, and the consent judgment becomes final

in the sense that it cannot be appealed from or impeached for error and can only be impeached by attacking the settlement itself, or by showing that it is different from the settlement.''

In Renick v. Renick, 247 Ky. 628, 57 S. W. (2d) 663, the husband and wife entered into a contract by which the husband was to pay to the wife a certain amount each month, and this contract was incorporated in the divorce decree. It was held that the court had no power to modify the judgment because of a change in the husband's circumstances. In Honaker v. Honaker, 267 Ky. 129, 101 S. W. (2d) 679, 684, it was said: ''An agreement as to alimony, carried into the judgment, cannot be changed by the court after the term the judgment was entered, unless the agreement provided for modification or the court retains control of the action.''

To the same effect are Boehmer v. Boehmer, 259 Ky. 69, 82 S. W. (2d) 199; Hargis v. Hargis, 252 Ky. 198, 66 S. W. (2d) 59; Smith v. Smith, 236 Ky. 693, 33 S. W. (2d) 651; Pauley v. Pauley, 280 Ky. 66, 132 S. W. (2d) 512.

There is conflict in the authorities as to whether an agreement between a husband and wife, pending divorce, and incorporated in a divorce decree renders the decree immune from subsequent modification where the agreement merely fixes the amount of the allowance to the wife for maintenance and support, but it is well settled in this jurisdiction that a decree embodying an agreement of the parties, which has the effect of a valid property settlement contract, cannot be modified. Having concluded that the agreement incorporated in the divorce decree was a final settlement of the property rights of the parties, it follows that the circuit court was without authority to vacate or modify the decree in so far as appellant's vested property rights are concerned.

The judgment is reversed, with directions to enter a judgment in accordance herewith.

Whole Court sitting.