## ROGERS v. ROGERS.
### No. 11512.

United States Court of Appeals
District of Columbia Circuit.

Argued Dec. 10, 1952.

Decided Feb. 19, 1953.

Mr. Lewis H. Shapiro, Washington, D. C., with whom Mr. Whitford W. Cheston, Washington, D. C., was on the brief, for appellant.

Mr. James M. Desmond, Washington, D. C., for appellee.

Before WILBUR K. MILLER, BAZELON and FAHY, Circuit Judges.

FAHY, Circuit Judge.

This appeal is from an order of the United States District Court for the District of Columbia entered April 24, 1952, denying, for lack of jurisdiction, appellant's motion for increase in alimony.

Judgment for absolute divorce in favor of the wife, appellant, had been granted March 8, 1951. Shortly prior thereto the parties had entered into an agreement which provided for a lump sum payment to appellant of $7,000.00, assumption by appellee husband of certain of appellant's debts, disposition of household furniture, furnishings and jewelry, payment of appellant's attorney's fee, and waiver of dower, courtesy and any and all claims which each might have against the other. Appellant agreed also not to pledge appellee's credit. The agreement provided that it should be made part of the divorce decree in the event one was granted. Included also was a recital that the parties had been advised the court "has jurisdiction to provide for property settlements" and looks with favor "upon the parties themselves entering into an amicable settlement and adjustment of their respective property rights as well as claims by and against each other", this recital concluding with the words that they were "desirous of entering into an agreement for that purpose and no other". There was another provision, however, around which the controversy is primarily centered, as follows:

"The husband further agrees that in addition to the aforesaid payment provided for in paragraph 1 hereof, he will pay to the wife, during her lifetime, the sum of Two Hundred Fifty ($250.00) Dollars per month as maintenance for her support, the first payment to commence as of March 1, 1951, and a like sum of Two Hundred Fifty ($250.00) Dollars on the

first day of each and every month thereafter, provided however that should the wife remarry, in such event the payments provided for in this paragraph shall cease and terminate. And it is further provided that in the event the wife shall receive income in any amount from gainful employment, or receive an income from any source, the aforesaid monthly payments shall not be diminished or reduced thereby." (Paragraph 2)

The court incorporated the agreement in the judgment for absolute divorce in the following words:

"The Court, having examined a certain memorandum agreement dated February 27, 1951, wherein the parties have adjusted their respective property rights, the Court does hereby confirm and approve the aforesaid agreement as if set forth *in extenso* herein, reserving jurisdiction to enforce compliance therewith and all matters pertaining thereto."

In her affidavit attached to her motion for increase in alimony appellant stated she was unable to support and maintain herself out of the monthly allowance, and that subsequent to the divorce the appellee had been promoted, receiving approximately $3,600.00 more income per annum than at the time of the judgment. There is no evidence in the record as to the meaning of the agreement other than the instrument itself.

The District Court, in holding it was without jurisdiction to modify the agreement, said there was no assumption that because the court had incorporated the agreement in its decree and had reserved jurisdiction "to enforce compliance therewith", it intended to retain jurisdiction also to modify it.

If, however, the divorce judgment provided for alimony the District Court had jurisdiction to grant or deny the motion for an increase in its amount. § 16–413, D.C.Code 1951;[1] and where the

1. "After a decree of divorce in any case granting alimony and providing for the care and custody of children, the case

shall * * * be considered open for any future orders in those respects. (Mar. 3, 1901, 31 Stat. 1346, ch. 854, § 978.)"

court has such power the majority of jurisdictions, with which we agree, hold that it is unaffected by the fact that the award of alimony by the court is based on an agreement of the parties. Annotation, 1947, 166 A.L.R. 675, 676. See statement of the rule in Minnesota, set forth in Douglas v. Willcuts, 1935, 296 U.S. 1, 6–8, 56 S.Ct. 59, 80 L.Ed. 3. The question, therefore, as it here arises, may be stated as whether the agreement as incorporated in and made a part of the judgment provides for alimony. If it settles only property rights its inclusion in the judgment does not confer jurisdiction to modify it. Ettlinger v. Ettlinger, 1935, 3 Cal.2d 172, 44 P.2d 540; Rich v. Rich, 1941, 44 Cal. App.2d 526, 112 P.2d 780; Turner v. Ewald, 1942, 290 Ky. 833, 162 S.W.2d 181; Watt v. Watt, 1942, 69 Ohio App. 322, 43 N.E. 2d 633.

Reference to the agreement by the parties as a property settlement, McHan v. McHan, 1938, 59 Idaho 496, 84 P.2d 984; Prime v. Prime, 1943, 172 Or. 34, 139 P.2d 550, or alimony, or maintenance for support, Puckett v. Puckett, 1943, 21 Cal.2d 833, 136 P.2d 1, has not precluded the courts from construing payments to be what the evidence shows them to be. Even where the agreement provides for periodic payments for maintenance and support "in lieu of alimony" the court exercised jurisdiction to modify. Gloth v. Gloth, 1930, 154 Va. 511, 153 S.E. 879, 71 A.L.R. 700. As a result, neither the fact that the judgment in the present case says that the "parties have adjusted their respective property rights" nor a similar recital in the contract itself disposes of the case. Such descriptions point in one direction. Pointing in the other, the agreement recites that the husband is making monthly payments to the wife "as maintenance for her support," which accords with the prevailing definition of alimony. 2 Nelson, Divorce and Annulment § 14.02 (2d ed. 1945). The fact that the payments are to cease on remarriage also lends support to the alimony theory. See, McHan v. McHan, supra, and cases cited; Turner v. Ewald,

supra. Moreover, retention of jurisdiction over the provisions in the agreement "to enforce compliance therewith *and all matters pertaining thereto*" [emphasis supplied] might indicate that the court deemed paragraph 2 of the agreement, when included in the judgment, to be a provision for alimony which remained within the court's jurisdiction.

■■■ The question whether the judgment should be construed as a grant of alimony depends in part on whether said paragraph 2 is separable from the other provisions.[2] We think it is. This being so, the remaining question, in the absence of more definite light from the provisions of the judgment other than the terms of the agreement, is whether the parties intended paragraph 2 as the basis for an alimony award rather than as part only of a property settlement. Their intention is not apparent from the agreement itself, which is ambiguous in this regard. Evidence as to what they intended, if available, might be very helpful. If not available the court must of course decide without it; but we think the proper procedure now is to reverse and remand so as to afford the parties opportunity to present evidence which might reveal their intention. This procedure is supported by Lort v. Lort, 1952, 91 U.S.App.D.C. 118, 198 F.2d 598, 600, and Baker v. National Savings and Trust Co., 1950, 86 U.S.App.D.C. 161, 164, 181 F.2d 273, 276; and it is within our authority under 28 U.S.C. § 2106 (Supp. V, 1952).

Reversed and remanded for further proceedings not inconsistent with this opinion.

WILBUR K. MILLER, Circuit Judge (dissenting).

I cannot concur in the conclusion of the majority that

"* * * the proper procedure now is to reverse and remand so as to afford the parties opportunity to present evidence which might reveal their intention."

---

2. McHan v. McHan, supra; Banck v. Banck, 1944, 322 Ill.App. 369, 54 N.E.2d

577; Prime v. Prime, supra; and Gloth v. Gloth, supra.

Whether the parties intended their contract to create an obligation on the part of the husband to pay alimony seems to me to be immaterial because, even if they had intended to do so, they could not have created such an obligation by their mere agreement. Alimony does not arise from contract but from the judicial judgment which orders the husband to pay it.[1]

So, regardless of the parties' intention, the question simply is, did the District Court order the husband to pay alimony, or did it not? For, if the divorce decree awarded alimony, the trial court had the power later to change the allowance, and the District Court erred in disclaiming jurisdiction to do so; on the other hand, if the judgment of divorce did not order the payment of alimony, the court was correct in holding it could not later modify the contractual arrangement as to monthly payments.

From the foregoing, I conclude the legal question presented by this appeal is whether a divorce decree confirming and approving a property settlement, which includes monthly payments by the husband, is a judicial allowance of alimony. Although that question is now before us for the first time, it has heretofore been considered by three district judges in this circuit, all of whom reached the same conclusion.[2]

In deciding the present case, Judge James W. Morris, of the District Court, held that the judgment which adopted and approved the agreement and reserved jurisdiction to enforce compliance therewith did not "grant alimony" within the meaning of § 16–413, D.C.Code 1940, which provides:

"After a decree of divorce in any case granting alimony and providing for the care and custody of children, the case shall still be considered open for any future orders in those respects."

He therefore held the court did not have jurisdiction, after the decree of divorce had been entered, to alter the terms of the agreement made by the parties. Judge Morris said, D.C.1952, 109 F.Supp. 937, 939:

"Obviously the agreement provided for a settlement between the parties, based, not only upon the monthly payments provided for therein, but respecting the disposition of property, the payment of substantial lump sums, and the payment of certain indebtedness. It is certainly not to be assumed that, because the Court reserved jurisdiction to enforce such agreement, it intended to retain jurisdiction to change and modify it. The conclusion reached by this Court in the case of Woodruff v. Woodruff, Equity No. 61547, [in a ruling announced by], Judge Holtzoff, is to the effect that the Court could not alter an agreement made by the parties in substantially the same situation.[3] Similar action was

---

1. In Audubon v. Shufeldt, 1901, 181 U.S. 575, 577–578, 21 S.Ct. 735, 736, 45 L. Ed. 1009, the Supreme Court said:
"* * * It [alimony] is not founded on contract, express or implied, but on the natural and legal duty of the husband to support the wife. The general obligation to support is made specific by the decree of the court of appropriate jurisdiction. * * *
"In * * * the District of Columbia alimony is granted by decree of a court of equity."

2. The question has arisen elsewhere. For example, in North v. North, 1936, 339 Mo. 1226, 100 S.W.2d 582, 586, 109 A.L. R. 1061, the court said:
"The provision in the decree awarding the wife $500 per month to continue so long as she remained single and unmar-

ried * * * justifies the conclusion that the decree was an approval of the contract, and not an award of alimony, because the court had no authority to make an award of alimony to continue so long as the wife remained single and unmarried, but did have authority to approve a contract between the parties containing that provision. The Maryland Court of Appeals decided a similar question in Dickey v. Dickey, reported in 154 Md. 675, 141 A. 387, 388, 58 A.L.R. 634."

3. Judge Holtzoff did not write an opinion in the Woodruff case but the Municipal Court of Appeals for the District of Columbia discussed his ruling and made observations of its own in Woodruff v. Woodruff, 1948, 60 A.2d 538, 539. From that opinion it appears that the divorce decree contained this paragraph:

taken by this Court in the case of Heckman v. Heckman, D.C.[1949] 83 F.Supp. 687, acting through Judge Pine."

In the Heckman case, Judge Pine construed the following provision of a divorce decree:[4]

"The Court having examined an agreement dated September 16, 1937, and supplement thereto dated July 19, 1945, made and executed between the plaintiff and defendant herein, whereby said parties have adjusted their respective property rights and all claims for alimony, etc., the Court hereby approves and confirms said contract."

I quote the following from Judge Pine's opinion, D.C.1949, 83 F.Supp. 687, 688:

" * * * In the instant case the Court did not require the husband to pay alimony, but only approved an agreement by which the parties adjusted their respective property rights and 'all claims for alimony, etc.' The decree containing no provision 'granting alimony,' it cannot 'be considered open' for a future order in that respect."

"Further ordered, that said stipulation be, and the same hereby is, ratified and confirmed as the contract for support and maintenance, as well as counsel fees, entered into between the parties hereto."

It was the husband's "motion to modify order for separate maintenance" which Judge Holtzoff denied, holding that the divorce decree did not award alimony but merely confirmed a stipulation signed by the parties as the "contract for support and maintenance" entered into between the parties.

Thereafter Mrs. Woodruff sued her former husband in the Municipal Court for unpaid instalments under the contract. He resisted on the ground that her claim being for alimony was not within the jurisdiction of the Municipal Court. Judge Hood, speaking for the unanimous Municipal Court of Appeals, affirmed the Municipal Court's holding

The conclusions reached by these three able district judges seems to me to be sound. The judgment of divorce here, as in the Heckman case, does not purport by its terms to order the husband to make monthly payments, and contains no hint of alimony; it merely confirms and approves the contract which it describes as one "whereby said parties have adjusted their * * * property rights".

Furthermore, if it were possible for the parties to a divorce proceeding to create by contract an award of alimony, the agreement in this case could not be construed as having done so, because one of its provisions with respect to the monthly payments is inconsistent with the nature of alimony.

The inconsistent provision is that which binds the husband's estate to continue the monthly payments after his death. Since a court's award of alimony is based upon, and is an enforcement of, the husband's common law duty to support his wife, it ceases with his death just as the duty to support terminates at that time. A divorce decree therefore cannot require alimony to be paid by the husband's estate after his death.[5] For that reason, it should not be supposed that the District Court intended to award alimony when it confirmed and approved the contract which obligates the

that it had jurisdiction and, among other things, said, 60 A.2d at page 540:

"* * * It is plain that the stipulation was a property settlement agreed to by the parties and submitted to the court in lieu of submitting the question of alimony. The District Court ratified and confirmed the stipulation as a contract for support and maintenance. While this did not convert the stipulation into a decree for alimony, certainly it in no way weakened the validity of the stipulation as an agreement between the parties. Undoubtedly it was because of the parties' agreement that the court did not award alimony."

4. It will be observed that, in contrast with the judgment in this case, the Heckman judgment recites that by the agreement the parties had adjusted not only their property rights but also "all claims for alimony".

5. Gaines v. Gaines, 9 B.Mon., Ky., 295.

husband's estate, after his death, to continue the monthly payments—an obligation which would be enforced, at the wife's suit, against the deceased husband's estate. I suppose the husband's personal representative could not be held in contempt should he fail to make the monthly payments.

Moreover, the parties recited in the contract their purpose in making it: they desired to enter "into an amicable settlement and adjustment of their respective property rights, as well as *claims by and against each other*." (Emphasis added.) And the court, in affirming and approving the arrangement, described the contract as being one "wherein the parties have adjusted their respective property rights," as I have said.

To be sure, the nature of a contract is not determined solely by the label the parties give it. But, when the contracting parties emphatically state their purpose, when the terms of the agreement comport with that purpose fully, and when the court recognizes that purpose, there is no need to invite the submission of evidence that the parties intended something else with which their agreement is not consistent; and that the trial court intended, in terms inappropriate for that purpose, to make an award of alimony, which it did not make.

The language of the judgment which retains jurisdiction to enforce the contract *should be regarded as surplusage in any event.* If the court was allowing alimony, it was unnecessary, because the statute kept the case open; and if the judgment merely approved the contract, the recital that jurisdiction was being retained did not give the court power to enforce performance through contempt or other summary proceeding; and of course express retention of jurisdiction to require compliance added nothing to the District Court's general jurisdiction to enforce the contract at the suit of one of the parties.

In my opinion, the judgment of the District Court should be affirmed.