Turner v. Ewald et al.
Turner v. Fidelity & Columbia Trust Co. et al.
(two cases).

Ewald v. Ewald et al. (two cases).

May 21, 1943.

As Modified on Rehearing Oct. 8, 1943.

Wm. Marshall Bullitt and Leo T. Wolford for appellants.

Edw. P. Humphrey and John G. Heyburn for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Affirming in part and dismissing in part.

The five appeals have a common origin and seek the same end. They have been consolidated. The first is a second appeal involving an issue arising from our decision in Turner v. Ewald, 290 Ky. 833, 162 S. W. (2d) 181. We summarize the facts fully related in that opinion.

On December 4, 1928, during or following domestic difficulties, L. P. Ewald assigned to his wife, Mrs. Mildred C. Ewald, for her life, a sufficient amount of a trust fund in the hands of the Fidelity & Columbia Trust Company to yield her $1,000 a month and to keep in effect $63,000 of life insurance in which she was the beneficiary. About three years later, following their separation in 1930, Ewald undertook to revoke the assignment. The trustee filed a suit asking a declaration of rights and duties. On July 20, 1932, Mrs. Ewald filed a suit for divorce. The next day judgment was entered in the suit for a declaration of rights in accordance with the wife's claim that the trust company as trustee was obliged to pay her $1,000 a month during her life and to pay the premiums necessary to keep the insurance in force. On the same day, but subsequent to the entry of that judgment, a contract was executed by Mr. and Mrs. Ewald settling their respective rights in each other's property and agreeing upon the husband's responsibilities in relation to the future support and maintenance of his wife and their son, who was then 12 years old. On the same day a divorce was granted Mrs. Ewald and the settlement agreement was incorporated in and adopted as part of the decree. The declaratory judgment, the separation agreement and the divorce decree are copied in full or the substance of omitted portions thereof stated in Turner v. Ewald, supra.

In January, 1934, Mrs. Ewald married again. Two years later Ewald filed an amended and supplemental pleading in the divorce suit asking that the judgment be revised. On April 29, 1939, the court vacated the provisions of that judgment except that which granted the divorce. The chancellor was of the opinion that by her remarriage Mrs. Ewald, then Mrs. Turner, had forfeited all her rights against her former husband under the contract of settlement and the original judgment. Evidence was heard upon the situation in life and the financial needs of Mrs. Turner and her son, Louis Philip Ewald, III. It was then adjudged that the trust company was not required to carry out their provisions and should not pay any further sums to Mrs. Turner. The supplemental judgment contained this provision:

"It is further ordered and adjudged by the Court that from the date of the entry of this judgment the defendant, Louis Philip Ewald, Jr., shall pay through his trustee, the Fidelity & Columbia Trust Company, for

the support, maintenance and education of the defendant, Louis Philip Ewald, III, an infant over fourteen years of age, the son and only child of the plaintiff, Mildred Cozzens Ewald Turner, and the defendant, Louis Philip Ewald, Jr., at the rate of six thousand dollars per annum during his minority. No further sum is to be paid for any of said purposes and said payments shall not be made or continued after the said infant defendant, Louis Philip Ewald, III, reaches the age of twenty-one years, which will be on January 6, 1941.

"It is further ordered and adjudged that said sums shall be expended by the Fidelity & Columbia Trust Company, Trustee, for the direct benefit of the defendant, Louis Philip Ewald, III, as aforesaid."

We reversed the judgment of April 29, 1939, being of opinion that the provisions of the divorce decree containing the separation agreement were final and conclusive, particularly that the establishment of the trust yielding $1,000 a month to Mrs. Ewald and the payment of the insurance premiums was the equivalent of a lump sum of alimony. We held that she had become vested with an equitable interest in the corpus of the trust estate assigned to her; hence the court had no power to modify the judgment in so far as it related to that right. The case was remanded to the circuit court with directions to enter a judgment in accordance with the opinion.

On June 19, 1942, pursuant to notice given Mrs. Turner's counsel, the mandate of this court was filed in the trial court and the judgment of April 29, 1939, vacated. Pursuant also to notice accepted by her counsel, the defendant, Ewald, on the same day, filed a motion that the court set the case for hearing for the determination of the amount due Mrs. Turner. Filed with it was the affidavit of an officer of the trust company, who was also the business agent of L. P. Ewald personally, stating what sums had been paid Mrs. Turner and Louis Philip Ewald, III, at the rate of $500 a month under the supplemental judgment. With counsel for the plaintiff present in open court on June 22nd, the defendant also moved for an order of reference to the master commissioner to ascertain the amount due her. After hearing counsel for both sides, the court delivered an opinion on July 9th that Mrs. Turner should account for the sums paid her and her son under the judgment of April 29, 1939, at the rate of $500 a month until January 6,

1941, when he had become 21 years of age, and that the defendant should receive credit for that amount on what he owed under the original judgment of July 21, 1932. Mrs. Turner had not superseded the judgment of April 29, 1939, when she appealed it. The court appointed an expert accountant as special commissioner to examine the accounts of the trust company as trustee and ascertain what balance was due. On July 10th he filed a report showing the payments which should have been made and those which were made, with calculations of interest. He computed the balance to July 10, 1942, to be $32,245.08. The record discloses no objection by the plaintiff to this procedure other than an exception to the order appointing the special commissioner. That was well taken for it was not shown that the master commissioner was disqualified. Sec. 399 Ky. Stats.; Louisville Public Warehouse Co. v. Miller, 81 S. W. 275, 26 Ky. Law Rep. 351. The foregoing shows that there is no justification of the criticism by counsel for the appellant of the trial judge (one of the common law judges sitting as special chancellor) to the effect that he had acted arbitrarily and "railroaded" the determination of the case "without notice, without process, without pleading, without issues, without testimony or evidence of any kind," and without having given his client an opportunity to be heard. There are other statements in appellant's brief not supported or justified by the record.

Judgment was entered July 13, 1942, confirming the special commissioner's report and ordering the trust company to pay Mrs. Turner $32,245.08. Two weeks later, July 27th, her counsel filed a petition for a rehearing and motion to set aside the judgment, elaborately setting forth grounds therefor. This was overruled August 10th, as was a motion made that day to modify and make the judgment more specific. The appeal first styled above was then granted. It is from (1) the order of June 19, 1942, filing the mandate of this court and vacating the judgment of April 29, 1939; (2) the order of July 9, 1942, appointing the special commissioner; (3) the judgment of July 13th; and (4) the order of August 10th overruling the motions to set aside and to modify the judgment. It may be said here that on July 16th the trust company tendered Mrs. Turner's counsel the amount of the judgment for $32,245.08, without prejudice to any right she might have to collect an additional sum if it should be ultimately adjudged to her, but the

tender was declined. The money was then paid into court. It is contended here, as it was below, that Mrs. Ewald is entitled to judgment for the full accumulation of $1,000 monthly payments awarded her in the original judgment, with interest, aggregating more than $12,000 above the sum adjudged to be due her.

The second styled appeal involves supplementary proceedings in the declaratory judgment suit. On July 17, 1942, after all the above judgments had been entered in the divorce suit, Mrs. Turner had an execution issued in the declaratory judgment suit against the trust company, as trustee, for $41,667.83, which was returned "No property found." On August 12th she had another execution issued for $42,828.66, on which the same return was made. On September 1st she was permitted, by order of court, to file in that case a "Supplemental and amended answer, counterclaim and cross petition." This pleading set forth in detail all the steps which had been taken in the divorce suit and filed a copy of that entire record as a part. In so far as relief was prayed, this supplemental pleading treated the declaratory judgment case as wholly independent of the divorce suit and all the proceedings taken therein. It set up the issuance of the execution of August 12th with the return of nulla bona, and asked for discovery, a disclosure and an attachment. Section 439, Civil Code of Practice, as amended by Chapter 100, Acts of 1942. Attachments were served on the trust company as trustee and garnishee. The court sustained the trust company's motion to quash the two executions and the returns thereof, as well as the attachments, and also sustained its special demurrer to the supplemental and amended answer and counterclaim, based upon the ground that another action was pending between the same parties for the same cause, namely, the divorce suit, which was then pending in the Court of Appeals. The appeals are so related that the questions must be considered together. There are some collateral or dependent appeals which will be later noted.

The determination of all these appeals from the several orders and judgments rests upon the decision of two primary questions. One is whether the original judgment in the declaratory judgment suit has continued to be a separate, independent and enforceable decree, unaffected by the judgment in the divorce proceedings, which is the essential contention of the appellant, Mrs. Turner, or the contrary as the appellees contend.

The other question is the interpretation of the original judgment in the divorce suit and the effect of the action taken by the trustee under the supplemental judgment, which was not superseded, pending its appeal and before it was reversed.

As will be perceived from the outline of the proceedings, the agreement settling the property rights of the husband and the wife in anticipation of divorce was made practically simultaneously with the entry of the declaratory judgment, which it would appear was itself agreed upon. It became a primary part of the agreement as it related to the financial settlement. In consideration of the terms of that contract Mr. Ewald, among other things, waived any right to appeal that judgment and to have his wife restore to him any property obtained by or through him in consideration of their marriage relation, especially "to require any restoration of any rights obtained by Mrs. Ewald under said final judgment of the Jefferson Circuit Court." Another paragraph stated that both parties waived all rights under the provisions of Section 2121 of the Statutes, the substance of which is recited. Consecutively, the agreed financial settlement containing the declaratory judgment was incorporated in the judgment in the divorce case, which we denominated in the first opinion as a "consent decree." The court reserved jurisdiction of that case for the purpose of enforcing its terms, which, of course, included the terms of the contract and the declaratory judgment. But for that contract and the divorce decree, the trust and the judicial construction of it, with the declaration of the wife's rights based thereon, would have been terminated by the divorce under the terms of Section 425 of the Civil Code of Practice, which requires that a divorce decree shall contain an order restoring any property "which either party may have obtained, directly or indirectly, from or through the other, during marriage, in consideration or by reason thereof." This is repeated in Section 2121, Ky. Stats., now KRS 403.060(2); Warren v. Spurlock's Adm'r, 292 Ky. 668, 167 S. W. (2d) 858. It was expressly stated in the instrument establishing the trust that it was in consideration of the marriage and in the agreement made in anticipation of divorce that all potential rights under Section 2121 of the Statutes were waived. The supplemental judgment in the divorce suit undertaking to terminate the trust and the declaratory judg-

ment was reversed only because the contract and the original decree incorporating it gave the wife a vested right in the trust and the benefits of the contract.

Therefore, the foundation upon which the plaintiff sought to rest her supplemental proceedings for an accounting and enforcement of the declaratory judgment had been removed and placed elsewhere. If this had not been true, then there would certainly have been a valid defense available to the defendants, Ewald and the trust company, namely, the divorce of the beneficiary. Indeed, this is conceded by the appellant. We are of the opinion that by agreement of the parties the declaratory judgment suit was abated and the judgment had become merged in the divorce decree.

Supplemental proceedings had previously been taken in the divorce suit to accomplish the same end. The court could and probably did take judicial notice of that. Maynard v. Allen, 276 Ky. 485, 124 S. W. (2d) 765. The special demurrer to the plaintiff's supplemental and amended pleading in the declaratory judgment suit properly raised the point of the pendency of that other suit involving the same question and parties. It is purely legalistic to say, as does the appellant, that they were not the same and that the trust company was not bound by the terms of the divorce judgment. It had been made a party to that suit in March, 1936, by Ewald's supplemental pleading opening up the case to have the judgment modified or revised with respect to the trust because of Mrs. Ewald's remarriage. He had not been made a party to the supplemental proceeding in the declaratory judgment suit, nor had the son, Philip Ewald, ever been a party to it, although he had become a party to the divorce suit by constructive service. There were simply more parties in the divorce suit than in the other, but those who were parties in the supplemental declaratory judgment proceedings were also parties in the other one. It is likewise unrealistic to say the causes were not the same. The relief asked in the declaratory suit by way of discovery, attachment and injunction was ancillary to the principal relief being sought, namely, an accounting for the gross sum due at the rate of $1,000 a month, without credit, against the trust company as trustee. We think the procedure in filing the special demurrer was appropriate and that the court properly sustained it.

Before going to the appeals in the divorce suit involving the main question, we may dispose of another branch of the appeal in the declaratory judgment action arising after the supplemental pleading had been dismissed as above described.

On August 31, 1942, Mrs. Turner had notice served upon the other parties in the declaratory judgment suit that on September 3rd she would take the depositions of sundry witnesses, "examine the adverse party, to-wit, Fidelity & Columbia Trust Company, as trustee, and individually, as if under cross examination." Subpoenas were served upon three officers of the company to appear for that purpose. As stated above, the court had sustained a special demurrer to and dismissed the supplemental and amended pleading of the plaintiff, Mrs. Turner, on September 2nd. The officers of the company appeared but upon the advice of counsel refused to answer a number of questions. They related to the custody, use and disbursement of the fund originally adjudged to be held in trust for the benefit of Mrs. Ewald and to certain financial transactions between the trust company and Mr. Ewald. The notary public before whom the depositions were sought to be taken imposed a penalty for contempt upon the witnesses and certified the proceedings to the chancellor. He ruled that there was no suit pending about which they could be lawfully compelled to testify, and sustained the defendant's motion to vacate the action of the notary. Counsel for plaintiff persisted almost to the point of contumacy upon a hearing of evidence as to what had occurred and upon having the proceedings before the judge reported, all of which was denied. The court later overruled a motion to set aside the ruling and order. An appeal from the first order is included in the appeal from the main judgment and Mrs. Turner has been granted an appeal in this court from the later one, in which a bill of exceptions was filed. It is included in the second styled appeal.

Counsel has submitted elaborate and strong arguments upon the right to take those depositions, contending that the suit was pending within the meaning of the term as it may be related to the situation, that is, for the purpose of taking depositions de bene esse. If this argument should be sustained, of what avail would it be to obtain a reversal of these orders? All the proceedings now before us for review were had for one purpose, namely, to sustain the contention that Mrs. Turner

should not be charged with the $500 a month paid by the trust company under the supplemental judgment entered in the divorce suit in April, 1939. Since it is now determined that she should be charged with those sums, the questions raised on this branch of the case have become moot and need not be answered.

We return to the proceedings in the divorce suit following the filing of the mandate reversing the judgment of April 29, 1939, as already described. It had been developed in the evidence that the special allowance of $1,250 annually was inadequate for the education of Philip Ewald and that the mother had been spending upon her son a substantial part of the $1,000 a month from the trust, which had been agreed upon and stated in the judgment should be "for her support and maintenance and the support, education and maintenance of the son." It was upon this evidence that the chancellor provided in the modification of the original judgment that the father should pay, through his trustee, $6,000 a year for the "support, maintenance and education" of his son during his minority. The provision is quoted in full in the early part of this opinion. In Mrs. Turner's appeal from that judgment we made no exception of this part of it in our opinion. The son was an appellee, but remained passive and took no part in it. There was no cross appeal by the father. Doubtless he recognized his legal obligation to maintain his son and realized that this allowance of $6,000 a year was made only because the allowances to his mother for that purpose had been forfeited and vacated by the supplemental judgment. Although a large amount, it was certainly incidental to and made in substitution of the provisions of the original decree and the reversal of the modified judgment carried this part of it. The mandate was to the effect, namely, that the judgment should be reversed, no exception or qualification being attached.

There is considerable argument respecting the propriety of the procedure taken at the instance of the defendant, L. P. Ewald, Jr., when the mandate had been filed. We have already detailed it. The order referring the case to the special commissioner was that he should ascertain from the accounts of the trust company as trustee the amount due Mrs. Turner and make a report. This order was entered in accordance with the written opinion of the court, rendered after the parties had been fully heard, that "It is the duty of this court to restore

to each party as nearly as possible the status quo of the parties prior to the supplementary decree entered on April 29, 1939.'' Much of the argument respecting this matter falls out with our decision that the declaratory judgment was merged with the divorce judgment and that reversal of the supplementary judgment in the divorce case carried with it the annual allowance of $6,000 for the maintenance and education of the son. Although neither the opinion nor the mandate of this court indicated what steps should be taken upon a reversal other than to vacate the judgment appealed from, the restoration of the parties to the status quo, including restitution and accounting for anything paid under it pending the appeal, was consequential relief, the right to which was necessarily implied. Whitehead v. Brothers Lodge, 71 S. W. 933, 24 Ky. Law Rep. 1633; Drovers' & Mechanics' Nat. Bank v. Northern Coal & Coke Company, 133 Ky. 773, 119 S. W. 151; Powell v. Sparks Milling Company, 285 Ky. 727, 149 S. W. (2d) 22. Those cases also held that such relief may be properly granted upon motion or by rule. It had been held as long ago as 1848 that the summary proceeding was appropriate in a suit in equity as well as an action at law. Morgan v. Hart, 48 Ky. 79, 9 B. Mon. 79. See also Hess v. Deppen, 125 Ky. 424, 101 S. W. 362, 15 Ann. Cas. 670.

Complaint is registered that there was no evidence upon which to base the judgment appealed from. It was apparent that the payments of $1,000 monthly had ceased and those of $500 monthly for the benefit of the son had been made during the pendency of the appeal from the last judgment. It was also apparent that the entire matter of these payments was shown on the books of the trust company as trustee, and the situation and financial requirements of the son and previous expenditures by the mother on that account were contained in the record. The plaintiff filed no exceptions to the special commissioner's report of facts and calculations. It is contended here that this was because it was prematurely confirmed. But it is not contended that anything else might have been developed. We are of the opinion that the practice was authorized and the proceeding was without harm to the appellant, overlooking as we may the matter of her waiver.

After disposing of these technical questions, we come at last to the crucial one, namely, was Mrs. Turner rightly charged with the payments of $500 a month,

made under the reversed judgment, amounting to $10,-096.78? On one side, in her favor, are the sums payable under the original divorce judgment, namely, $1,000 a month, and $625 semi-annually, with interest from the respective due dates. The aggregate is calculated by the appellant to the date of the judgment as $41,635.46 from the trust fund, and $2,619 from Ewald Personally for the education of his son, a total of $44,254.46. The judgment, taking into consideration the payment of $10,-096.78, with the adjustment of interest calculations, was for $32,245.08. The difference is the amount involved in this appeal.

Appellant lays emphasis upon (a) the claim that her right to the entire sum rests upon the declaratory judgment, which had never been modified or set aside; (b) the fact that the judgment of April 29, 1939, in the divorce suit was not in her favor to any extent but stripped her of all her rights; and (c) the further fact that the allowance of $500 a month was expressly confined to the "support, maintenance and education" of the son until he became 21 years old, January 6, 1941, and that it should be "expended by the Fidelity & Columbia Trust Company, Trustee, for the direct benefit of the defendant, Louis Philip Ewald, III, as aforesaid." On the appellee's side, emphasis is laid on the provisions of the original judgment that the allowance to the wife included the support, maintenance and education of the boy, whose custody was given her, and that the $500 a month was in substitution thereof and was in fact paid to her.

Appellant's first contention (a) has been disposed of and her rights must be determined exclusively from the divorce proceedings.

The judgment for $500 a month for the benefit of the son must be read in connection with the entire record and construed accordingly. Culton v. Couch, 230 Ky. 586, 20 S. W. (2d) 451; Hays v. Madison County, 274 Ky. 116, 118 S. W. (2d) 197; 30 Am. Jur., Judgments, sec. 31. That record shows its substitution for the allowances made the mother in part for the same purpose. The son had grown-up meanwhile. The strict interpretation of the modified judgment as to who should spend the money for him, namely, the trust company, ought not to control in face of the realities. The record discloses him to be a young man of exceptional ability and

a student at Yale University. The question is not who should have received it but who did receive it. It was made to appear that the checks were payable to the son and the mother jointly, were endorsed by both of them and placed on deposit to the son's credit. The trial court was of the opinion that as the checks by their terms required the endorsement of Mildred C. Turner as a condition precedent to their payment, she controlled their payment and the disposition of proceeds thereof, "the legal effect of which for the purposes of this action is the same as if she, Mildred C. Turner, had received the money thereon."

The conclusion seems to us to be just and sound. There is not much more that can be said. The original judgment made the mother a disbursing agent for the support and education of the son. She assumed to continue such agency under the modified judgment, although she passed all the funds directly to him, since he had become a mature young man. She voluntarily accepted these payments for her son and in doing so must have recognized their purpose was to relieve her of the voluntarily assumed responsibility and obligation to maintain and educate him out of funds paid her by his father when he was a mere youth. It is not irrelevant that Mrs. Turner did not supersede and have the judgment under which these sums were being paid in substitution suspended until there was a final determination on the appeal. One who procures a reversal of a judgment cannot be allowed to retain an advantage gained by reason of it. Knight's Adm'r v. Illinois Central R. Co., 143 Ky. 418, 136 S. W. 874.

It is a well settled principle that when a judgment is reversed the law raises an obligation against the party to the record who has received the benefit thereof to make restitution to the other party of any and all money or other thing of value received by virtue of the judgment. Drury v. Frank, 247 Ky. 758, 57 S. W. (2d) 969, 88 A. L. R. 917; 3 Am. Jur., Appeal and Error, secs. 1242, 1246. In this instance it cannot be doubted that Mrs. Turner did receive a benefit from these payments. But for this judgment she would have had to pay for the maintenance and education of her son out of the money paid to her under the first judgment. It would be inequitable and unjust to hold that the obligation of her former husband to herself and their son was not discharged pro tanto. He is entitled to protection from the

adverse consequences of conforming with the judgment. Peek's Ex'r v. Peek's Ex'r, 50 S. W. 982, 21 Ky. Law Rep. 15. We are of opinion, therefore, that the judgment is proper.

Disposition must be made of the last styled appeals of Louis Philip Ewald, III, against his father and the trust company as trustee. The original divorce judgment by the adoption of the agreement settling the property rights of the parties provided that if Mrs. Ewald should predecease her former husband and the son should survive her, then he, the son, should be entitled to the proceeds of $63,000 life insurance described in the trust, and that at the death of Mrs. Ewald, if she survive Mr. Ewald, the corpus of the trust fund of $143,000 should be distributed in accordance with his will, or, in default of a will, to the persons entitled thereto under the present statute of descent and distribution. When Mr. Ewald filed the amended pleading seeking to have that judgment modified because of the re-marriage of his former wife, he made his son, Louis Philip Ewald, III, a party by cross-petition and he was brought before the court as a non-resident by constructive service. The judgment of modification of April 29, 1939, provided that the trustee should continue to pay the premiums on the insurance until the further order of court, and expressly reserved the questions of further maintenance of the policies and as to whom the proceeds should be paid, and retained the case on the docket for disposition of those questions. On the appeal from that judgment by his mother the son was made an appellee and brought before this court by constructive service. But, as we have said, he made no response.

While that appeal was pending Louis Philip Ewald, III, filed a motion in the circuit court to quash and set aside the proceedings by which he was brought before the court and to vacate the judgment in so far as it affected his rights. He also offered to file a petition in the case seeking the same end. On December 18, 1941, the court sustained objections to the motion and the filing of the petition, but stated the order was without prejudice to the son's right to renew his motion and tender of the petition when the Court of Appeals had finally acted upon the case then pending before us. Louis Philip Ewald, III, has perfected appeals from the judgment of April 29, 1939 (under authority of Sec. 745, Civil Code of Practice), and also the orders of Decem-

ber 18, 1941, overruling his motions to set aside the proceedings and to permit the filing of his petition. These appeals were submitted only a few days before the opinion in the appeal by Mrs. Turner was delivered and were not disposed of in connection with that appeal. It is apparent that by the reversal of the judgment of April 29, 1939, the questions involved in these appeals have become moot and need not be decided.

All the judgments are affirmed except those in which the questions have become moot and the appeals from them are dismissed.

Whole Court sitting.