CANTOR v CANTOR

Docket No. 78-21. Submitted June 16, 1978, at Lansing.—Decided December 5, 1978.

Plaintiff, Ruth M. Cantor, and defendant, Samuel Cantor, were divorced in Kentucky in 1968 pursuant to a consent decree which, among other things, provided for periodic alimony and child support payments to plaintiff, that defendant pay a sum certain for plaintiff's attorney fees, that defendant assume a loan secured by certain stock owned by plaintiff, and to indemnify plaintiff for any loss she might sustain due to the operation of defendant's business. Plaintiff began an action in 1976 to enforce the property settlement and alimony provisions of the divorce decree. The Oakland Circuit Court, Richard D. Kuhn, J., ordered defendant to reimburse plaintiff a sum certain for the value of stock she lost as a result of default on the loan, a sum certain for certain business debts of defendant which she paid and for the expense of her attorney fees and costs in the Kentucky divorce and the cost of her Jewish divorce and ordered defendant to pay plaintiff $50 per week alimony from the date of filing of the action until plaintiff either died or remarried. All prior alimony arrearages were cancelled. Defendant appeals alleging abuse of discretion, laches, lack of evidence and improper parties. *Held:*

1. A final, foreign divorce decree embodying a property settlement agreement executed by the parties and intended to be a full and final settlement of all claims of the parties against

REFERENCES FOR POINTS IN HEADNOTES

[1] 24 Am Jur 2d, Divorce and Separation § 948.
   Divorce decrees and full faith and credit—Supreme Court cases. 95 L Ed 559; 96 L Ed 152.
[2] 24 Am Jur 2d, Divorce and Separation § 719.
   Statute of limitations, laches, or acquiescence as defense to action or proceeding for alimony or support of child allowed by court order or decree. 70 ALR2d 1250.
[3,6] 5 Am Jur 2d, Appeal and Error §§ 839-841.
[4] 20 Am Jur 2d, Costs §§ 79, 80.
[5] 66 Am Jur 2d, References §§ 22-28.
[7] 24 Am Jur 2d, Divorce and Separation §§ 620, 630, 631.

each other and the marital estate is entitled to full faith and credit in Michigan.

2. The trial court did not abuse its discretion in failing to recognize laches as a total bar to plaintiff's claims since the nature of the defense of laches is equitable and defendant was not prejudiced by the delay.

3. The trial court did not err in granting a sum certain to reimburse plaintiff the value of the stock pledged as security for the loan where the value was alleged in the complaint and not denied by defendant and where both parties referred to the stock by its value.

4. An award of attorney fees creates an enforceable right in the party represented.

5. A party who consents to the taking of testimony before a referee may not submit additional proofs subsequent to the referee's hearing except by leave of court and evidence so submitted is properly ignored by the court.

Affirmed.

M. J. KELLY, J., dissented. He was left with a definite and firm conviction that a mistake had been made in awarding any alimony to plaintiff since her assets totalled $114,000 while the defendant's consisted of one-half of the $5,000 equity in a home and since their earnings between 1971 and 1975 were only several thousand dollars apart. He also disagreed with the majority holding that defendant's proffered evidence came too late. He would vacate the alimony order and remand to the trial court to resolve the issue of attorney fees.

OPINION OF THE COURT

1. DIVORCE—JUDGMENTS—FOREIGN JUDGMENTS—FULL FAITH AND CREDIT.

A final, foreign divorce decree embodying a property settlement agreement executed by the parties and intended to be a full and final settlement of all claims of the parties against each other and the marital estate is entitled to full faith and credit in Michigan.

2. DIVORCE—ALIMONY—ACTIONS TO ENFORCE ACCRUED ALIMONY—DE-FENSES—LACHES.

Laches is a bar to an action to recover accrued alimony, however, mere lapse of time without a showing of prejudice will not give rise to the defense of laches.

3. APPEAL AND ERROR—FINDINGS OF FACT—COURT RULES.

Findings of fact made by a trial court sitting without a jury may

not be overturned on appeal unless they are clearly erroneous
(GCR 1963, 517.1).

4. ACTION—PARTIES—JUDGMENT—AWARD OF ATTORNEY FEES—EN-
   FORCEABLE RIGHT.

   An award of attorney fees creates an enforceable right in the
   party represented.

5. EVIDENCE—REFEREE'S HEARING—SUBMISSION SUBSEQUENT TO HEAR-
   ING

   A party who consents to the taking of testimony before a referee
   may not submit additional proofs subsequent to the referee's
   hearing except by leave of court and evidence so submitted is
   properly ignored by the court.

                    DISSENT BY M. J. KELLY, J.

6. APPEAL AND ERROR—FINDINGS OF FACT—CLEARLY ERRONEOUS FIND-
   INGS.

   *The Court of Appeals will set aside the findings of fact of a trial
   court sitting without a jury where the findings are clearly
   erroneous; a finding is "clearly erroneous" when, although
   there is evidence to support it, the reviewing court on the
   entire evidence is left with the definite and firm conviction that
   a mistake has been committed.*

7. DIVORCE—ALIMONY—DISPARITY OF FINANCIAL RESOURCES.

   *The disparity in financial resources was sufficient to warrant the
   termination of a man's alimony obligations where the woman's
   assets totaled $114,000 and the man's net worth was only one-
   half of a $5,000 equity in a house and the parties' annual
   incomes were only several thousand dollars apart.*

*Sommers, Schwartz, Silver & Schwartz* (by *John
H. Shepherd),* for plaintiff.

*John M. Litch,* for defendant.

Before: D. E. HOLBROOK, P.J., and M. J. KELLY
and P. J. MARUTIAK,* JJ.

P. J. MARUTIAK, J. The parties in the instant
action were divorced in a 1968 Kentucky proceed-

* Circuit judge, sitting on the Court of Appeals by assignment.

ing. The divorce decree divided the parties' marital estate in accordance with the terms of a consent agreement that they had devised. The consent agreement provided *inter alia* that defendant pay plaintiff child support and alimony of $100 per week until the oldest of two children became 21 years of age, $80 per week until the remaining child became 21 years old, and then pay $50 a week until plaintiff either died or remarried. Defendant also promised in the consent agreement to assume payment of a loan that was secured by certain stock owned by plaintiff, to indemnify plaintiff for any loss she might sustain due to the operation of defendant's business, and to pay plaintiff $500 for attorney fees incurred during the divorce proceeding.

Prior to the final judgment of divorce in Kentucky, defendant moved to Michigan. Thereafter, on July 30, 1968, plaintiff filed a petition under the Uniform Reciprocal Enforcement of Support Act, MCL 780.151 *et seq.;* MSA 25.225(1) *et seq.,* with the Wayne County Circuit Court to secure payment of defendant's support obligations under the terms of the consent agreement. In an order dated September 13, 1968, defendant was directed to pay plaintiff $30 per week child support for the parties' one remaining child who was under the age of 18.[1] No mention of defendant's obligation to pay alimony to plaintiff under the terms of the consent agreement was made in the URESA order.

On April 19, 1976, plaintiff began the instant action in Oakland County Circuit Court by filing a complaint for enforcement of the property settlement and alimony provisions of the Kentucky divorce decree. A referee was assigned to take

[1] Defendant was not ordered to pay child support for the elder of his two children who was over the age of 18 at the time of the URESA order.

testimony and evidence in this matter and, follow-
ing a hearing at which both parties testified, the
referee recommended that defendant be relieved of
the obligation to pay any past or future alimony;
that defendant be ordered to pay plaintiff
$8,373.50 for stock that was awarded to plaintiff in
the Kentucky judgment, but which had been for-
feited when defendant failed to pay a bank loan
that he consented to pay in the property settle-
ment agreement and for which the stock was
security; that defendant reimburse plaintiff for
any loss she may have sustained in paying off
business debts that defendant had incurred and
promised to pay in the consent agreement; and
that defendant reimburse plaintiff for the $150
expense of a Jewish divorce and the $500 in attor-
ney fees and $100 in court costs that stemmed
from the Kentucky divorce proceeding.

Both parties filed objections to the referee's
recommendations and stipulated that this action
would be submitted to the Oakland County Circuit
Court on briefs in letter form with a transcript of
the referee's hearing. The lower court, without
taking any additional testimony or evidence, is-
sued its opinion and final order in this action on
November 8, 1977. It is undisputed that this order
substantially enforces the provisions of the Ken-
tucky divorce decree. It requires defendant to re-
imburse plaintiff for the $8,373.50 value of the
stock that she lost, for the $4,970.20 in business
debts of defendant that she paid, and for the
expense of the Jewish divorce, the Kentucky attor-
ney fees, and the Kentucky divorce proceeding
court costs. The court also ordered defendant to
pay plaintiff $50 per week alimony until she either
dies or remarries. These alimony payments were
to be made retroactive to the date that plaintiff

filed her complaint in the instant action; the alimony arrearages accrued during the 9 years from the date of the Kentucky judgment of divorce to the date of plaintiff's complaint were cancelled.

Defendant now appeals and asks us to review several alleged errors of the lower court.

Foremost among the issues raised on appeal by defendant is his contention that the trial court abused its discretion by enforcing the property settlement terms of the Kentucky divorce decree. He argues that Michigan recognizes the doctrine of divisible divorce and that doctrine holds that a Michigan court is not necessarily bound by all incidents of a foreign judgment of divorce. In support of his argument, defendant cites us to the decision of our Supreme Court in *Owen v Owen,* 389 Mich 117; 205 NW2d 181 (1973), *cert den,* 414 US 830; 94 S Ct 60; 38 L Ed 2d 64 (1973), *reh den,* 414 US 1086; 94 S Ct 606; 38 L Ed 2d 491 (1973).

As defendant correctly points out, the Court in *Owen* did state:

"The fact that plaintiff's Nevada divorce must be given full faith and credit does not mean however, that it is determinative of all of the incidentals of marriage." *Owen, supra* at 121.

However, defendant misconstrues the thrust of this statement by attempting to apply it to a factual situation that is clearly distinguishable from *Owen.* The Supreme Court noted in *Owen* that:

"The divorce in Nevada did not purport to adjudicate anything other than the marriage relationship. It does not mention property settlement or support payments. Furthermore, the law in Michigan appears to be that *ex parte* divorce decisions will not be given full faith and

credit with respect to these matters. The policy in Michigan is that the property rights of its citizens will be protected." (Citation omitted). *Owen, supra* at 122.

The case at bar involves a foreign divorce decree between parties who, at the time of that divorce, were residents of Kentucky and who had no contacts with Michigan. That divorce decree of a sister state did provide for the division of the marital estate. Further, that decree was not, as in *Owen,* an *ex parte* decree but, rather, was one that resulted from proceedings in which both parties fully participated to the extent of signing a consent agreement that provided for the distribution of their marital estate. Thus, *Owen* does not support defendant's position.

The question of whether the courts of this state should enforce a foreign divorce decree that divides a marital estate which is totally within the jurisdiction of the foreign court granting the decree is, somewhat, an issue of first impression. However, it would seem that, perhaps excepting cases where enforcement would be against a public policy of this state, such foreign divorce decrees should be entitled to full faith and credit in the courts of this state.

In *Mayer v Mayer,* 154 Mich 386; 117 NW 890 (1908), the Supreme Court held that where a decree of divorce in another state contained no reservation of power to amend or modify an award of alimony, the award was final and could be enforced in the courts of this state. Similarly, then, other awards of property in a divorce decree that are final should be enforceable in Michigan courts. We look then to Kentucky law to determine whether the divorce decree in the instant case was a final judgment in all of its aspects.

In Kentucky the terms of a property settlement

agreement that is embodied in a divorce decree are not subject to later modification by a Kentucky court if the agreement constitutes a property settlement agreement as such, that is, is meant as a final settlement of the property rights and claims of the parties. *Richey v Richey,* 389 SW2d 914 (Ky App, 1965), *Turner v Ewald,* 290 Ky 833; 162 SW2d 181 (Ky App, 1942).[2] Kentucky law does provide for certain exceptions to this general rule, however, none of these exceptions apply to the case at bar.

In general, Kentucky law does permit the modification of an award of alimony that is to be paid in installments. *Richey v Richey, supra; Renick v Renick,* 247 Ky 628; 57 SW2d 663 (Ky App, 1933). However, where a divorce decree incorporates the terms of a full and final property settlement agreement that provides for the payment of alimony as an integral part of the settlement, Kentucky courts are without power to later modify the award of alimony. *Richey v Richey, supra, Turner v Ewald, supra, Renick v Renick, supra.* The Kentucky rationale for this rule is that the parties' agreement constitutes a contract for settlement of all claims between them, and, therefore, it would be unjust to permit a party to escape obligations under such a contract and yet avail himself of its benefits.

Thus, if the property settlement agreement executed by the parties in the case at bar was meant

---

[2] This rule was changed by a 1972 Kentucky statute. In pertinent part, Acts 1972, Ch 182, § 8(6); KRS 403.180(6), a section that specifically deals with the incorporation of settlement agreements in marriage dissolution decrees, provides that such decrees may be modified.

However, the provisions of this statute apply only to divorce judgments entered after its effective date. *See Scott v Scott,* 529 SW2d 656, 657 (Ky App 1975) (holding, "[W]e are of the opinion that the 1972 Act cannot be given effect to impair a contractual right to maintenance vested * * * prior to enactment of the statute.").

to be a full and final settlement of their respective claims against each other and the marital estate, then the divorce decree that embodied it is an unmodifiable final decree that is entitled to enforcement in Michigan courts. We find this to be the case, for by its very terms the agreement purported to be determinative of the parties' rights in the distribution of their marital estate.[3] Therefore, the lower court properly held that the Kentucky decree of divorce was a final judgment and that its terms could be enforced in a Michigan proceeding.

Having decided that the Kentucky judgment of divorce is enforceable in a Michigan proceeding, we turn to defendant's arguments relating to certain defenses to specific items in the property settlement provisions of the divorce judgment. Defendant first contends that plaintiff was dilatory in asserting her rights under the Kentucky divorce decree and, therefore, her claim for enforcement is now stale and barred by the doctrine of laches.[4]

Laches has been held in Michigan to bar an action to recover accrued alimony. *Rybinski v Rybinski*, 333 Mich 592; 53 NW2d 386 (1952). Mere lapse of time, however, without a showing of prejudice will not give rise to the defense of laches. As the Supreme Court stated in *Manheim v Urbani*, 318 Mich 552, 555; 28 NW2d 907 (1947): "[I]t must

---

[3] *Inter alia,* the property settlement agreement provides:

"15. Except as otherwise herein provided, the plaintiff hereby releases the defendant and his estate from any and all claims of alimony in the event of their divorce and all rights of any and every kind whatsoever in or to any of his property, except as herein provided.

"16. In the event there is a judgment or decree of divorce entered, this agreement may be made a part of said judgment."

[4] Defendant does not assert that plaintiff's claim is barred by either the Michigan or a Kentucky statute of limitations. Therefore, defendant has waived any such possible defense and we do not consider its appropriateness. GCR 1963, 116.1.

appear the delay resulted in some prejudice to the party asserting laches which would make it inequitable to disregard the lapse of time and incidental consequences".

The facts, as adduced in the lower court, show that the lapse of time between the date of the divorce decree and plaintiff's attempt to enforce it in Michigan was approximately 9 years. The lower court found that plaintiff was guilty of laches in enforcing her rights under the divorce decree because she did not conduct a diligent search for defendant until just prior to the filing of her complaint in the instant matter. However, the lower court also found that defendant had made no attempt to comply with the terms of the Kentucky judgment of divorce and, further, that he had made his whereabouts unknown for a period of about 4 years.

Upon giving due regard to these opposing equitable considerations, the lower court extinguished plaintiff's right to alimony payments that accrued prior to the date that she filed her complaint in the instant action. Given the equitable nature of the defense of laches, we hold that the trial court did not abuse its discretion when it refused to recognize this defense as a total bar to plaintiff's action.[5] Defendant was in no way prejudiced by the delay of plaintiff in bringing the instant suit to enforce the Kentucky divorce decree. *Manheim v Urbani, supra.*

Defendant next argues on appeal that it was error for the trial court to award plaintiff the value of certain stock given her in the Kentucky

[5] Plaintiff does not appeal the order of the lower court that extinguished her right to the accrued alimony. We do not decide, therefore, whether the defense of laches was a bar to the collection of this money.

divorce decree but which was lost when defendant failed to pay off a loan for which it was security. Defendant contends that there is no evidence in the lower court record that establishes the value of this stock. We disagree and affirm the lower court's award.

Plaintiff asserted in a verified complaint that she was awarded certain stock in the Kentucky divorce judgment and that this stock was worth $8,373.50. Defendant did not deny this evaluation of the stock in his answer to plaintiff's complaint or at the referee's hearing; rather, he merely argued that he owed no stock to plaintiff.

At the referee's hearing, plaintiff's counsel referred to this stock by its value and questioned plaintiff as to where she acquired it. Plaintiff's answer to this question reasonably can be interpreted to affirm the value of the stock as stated in her attorney's question.

Findings of fact made by a trial court sitting without a jury may not be overturned on appeal unless they are found to be clearly erroneous. GCR 1963, 517.1. We cannot say that in interpreting plaintiff's answer in the above manner the trial court was clearly erroneous.

Defendant's final issue on appeal is that the trial court abused its discretion when it ordered defendant to reimburse plaintiff for $500 that she had given her Kentucky attorney after the divorce proceedings when defendant had failed to comply with an order of the Kentucky circuit court to do so. Defendant's argument on appeal, as it was in the court below, is that every action must be prosecuted in the name of the real party in interest. MCL 600.2041; MSA 27A.2041. Because the Kentucky attorney and not plaintiff was the real party in interest over the attorney fees, plaintiff

could not enforce this part of the judgment in a Michigan proceeding without an assignment.

There are two questions involved in our disposition of this issue: Does an award of attorney fees create an enforceable right in an attorney to collect them or in the party represented by that attorney to collect them; and is the taking of evidence closed after the completion of a hearing before a referee, or may a party submit additional evidence to the court prior to the time that the court makes it's ultimate decision?

A valid foreign judgment for attorney fees awarded in a divorce action ordinarily will be recognized and enforced in other states.[6] In the case at bar, defendant does not argue that the award of attorney fees in the original Kentucky action was not valid.

There appear to be no Michigan or Kentucky cases that discuss the issue of whether a party in a divorce proceeding can enforce an award of attorney fees made to the attorney that represented them. However, there seems to be no valid reason why that party could not enforce the award.

If an award of attorney fees is characterized as being made to the party on behalf of their attorney then, clearly, that party could enforce the award just as they could any judgment. On the other hand, if an award of attorney fees is characterized as being made to the attorney on behalf of the client that was represented by that attorney, then the client should be seen as an intended beneficiary of the award. This is so because the client has a contract with the attorney to pay the fees. To the extent that this contractual obligation is lessened, the client is a beneficiary of the award

---

[6] See 27B CJS, Divorce, § 373, pp 863, 866.

of attorney fees. By statute, MCL 600.1405; MSA 27A.1405, and by case law, *Ireland v Lester,* 298 Mich 154; 298 NW 488 (1941), a third party beneficiary to a contract has the same right to enforce that contract as they would have were they a party to it. Therefore, a party who is awarded attorney fees should be able to enforce that award regardless of whether the award is seen as being made to the party on behalf of the attorney or to an attorney on behalf of the client.

Neither party has briefed the issue as to whether additional evidence may be presented to a court prior to the time that the court issues an opinion but subsequent to the closing of a referee's hearing. Further, there is no Michigan case that disposes of this question.

In the case at bar plaintiff testified at the referee's hearing that she had paid her Kentucky attorney $500 when defendant failed to comply with an order of the Kentucky circuit court to do so. Defendant did not rebut this assertion of plaintiff at the hearing. Rather, he merely argued that this award was not enforceable. After the hearing, however, defendant presented to the trial court two letters that tended to show that he had paid the Kentucky attorney fees.

We hold that this evidence came too late and that it was proper for the lower court to refuse to consider it. After defendant consented to the taking of evidence before a referee, he could not thereafter submit additional proofs without the leave of the circuit court judge that referred the matter to the referee. GCR 1963, 527.1. Not only did defendant fail to request leave of the court to present additional evidence, he filed objections to the recommendations of the referee and stipulated that this matter be submitted to the circuit court

on only briefs in letter form with a transcript of the evidence.

Because, therefore, defendant did not seek its leave to open proofs, the lower court did not abuse its discretion by refusing to consider the evidence submitted by defendant after the referee's hearing was concluded. To hold otherwise, we would encourage the use of subterfuge in the offering of evidence which an opposing party might have little chance to rebut after the closing of a hearing before a referee.

Affirmed. Plaintiff may assess costs.

D. E. Holbrook, P.J., concurred.

M. J. Kelly, J. *(dissenting)*. I respectfully dissent from the majority opinion on two of the issues presented: The reinstatement of alimony payments and the award to plaintiff of $500 in attorney fees.

In my view, the trial court erred in reinstating the alimony payments. It is significant that the referee, who personally observed the parties and heard the presentation of the evidence, recommended that "the Defendant be relieved of the obligation to pay any past or future alimony as the Plaintiff is earning enough to support herself at this time". The circuit court, however, reinstated alimony payments of $50 a week, contrary to the referee's recommendation, without benefit of any first-hand knowledge of the parties, and without the presentation of any additional evidence. The majority, in passing on this issue, states that the trial court did not abuse its discretion when it refused to recognize defendant's defense of laches as a total bar to plaintiff's claim for alimony. I cannot agree.

Under GCR 1963, 517.1, an appellate court will

set aside the findings of fact of a trial court sitting
without a jury when such findings are clearly
erroneous. "[A] finding is 'clearly erroneous' when
although there is evidence to support it, the re-
viewing court on the entire evidence is left with
the definite and firm conviction that a mistake has
been committed." *Tuttle v Dep't of State High-
ways,* 397 Mich 44, 46; 243 NW2d 244 (1976). The
testimony adduced at the referee's hearing indi-
cated that while the plaintiff's assets total
$114,000, the defendant's net worth is only one-
half of a joint $5,000 equity in a home. In addition,
the parties' earnings between 1971 and 1975 were
only several thousand dollars apart. I think this
disparity in financial resources is sufficient to war-
rant the termination of defendant's obligation to
pay alimony. See, Anno: *Wife's possession of inde-
pendent means as affecting her rights to alimony
pendente lite,* 60 ALR3d 728. In light of these
findings and in the absence of any additional
judicial hearing, I am left with the definite and
firm conviction that a mistake has been commit-
ted. I would, therefore, reverse on this issue.

The second point on which I depart from the
majority holding is the question of attorney fees.
The original divorce judgment required the defend-
ant to pay the award of attorney fees directly to
the plaintiff's attorney, Mr. Carl Helman. No evi-
dence, other than the testimony of the plaintiff,
was ever presented establishing that the plaintiff
had actually paid Mr. Helman's fees. On the other
hand, defendant had a copy of a letter indicating
that he had sent payment to Mr. Helman in 1967.
The defendant asserts that this letter was unavail-
able at the time of the hearing, but that he did
attempt to present it to the trial court following
the referee's hearing and prior to that court's final
order.

I do not accept the majority's conclusion that this evidence came too late and that it was proper for the lower court to refuse to consider it. The reason relied upon by the majority, that the late submission of evidence would deprive the plaintiff of the opportunity to rebut it, is not persuasive in the present case. Here, the testimony of the plaintiff at the referee's hearing indicated that there was no rebutting evidence; plaintiff presented neither a receipt for the payment nor an assignment of Mr. Helman's right to collect the $500. Thus, there is no way that the introduction of this letter could have prejudiced the plaintiff.

Therefore, I would remand this case to the trial court to resolve the attorney fee issue and vacate that part of its order reinstating alimony payments.