KOWALESKY v KOWALESKY

Docket No. 79322. Submitted July 1, 1985, at Lansing.—Decided January 6, 1986. Leave to appeal applied for.

Defendant, Christine R. Kowalesky, appealed from a judgment of divorce from plaintiff, Richard W. Kowalesky, granted by the Saginaw Circuit Court, Joseph R. McDonald, J., claiming the circuit court erred in valuing property that was divided between the parties, in setting the amount of child support payments, and in awarding custody of the children jointly to the parties. *Held:*

1. The division of marital assets is within the discretion of the trial court and the Court of Appeals will not reverse unless it is convinced that it would have reached another result had it occupied the position of the trial court. The valuation of an asset by the trial court is a finding of fact that the Court of Appeals will reverse only if it is found to be clearly erroneous. Although the trial court's valuation of the plaintiff's dental practice seems to favor plaintiff, it was within the range of values testifed to by the various experts. Given the credentials of the plaintiff's expert, *i.e.,* experience in sales and valuations of dental practices, the Court of Appeals could not conclude that the trial court's finding in valuing the dental practice, except as discussed below, was clearly erroneous.

2. In valuing the dental practice, the trial court should have determined the value of all assets, tangible and intangible, including good will and accounts receivable, and subtracted from that the amount of the outstanding liabilities of the professional corporation. There was nothing in the record to indicate that plaintiff would discontinue his dental practice. Therefore, the value of the practice should have been the value of a going concern and not a value based on a distress sale of the practice or a value based on going out of business as the

REFERENCES

Am Jur 2d, Appeal and Error §§ 839, 868.

Am Jur 2d, Courts §§ 87 *et seq.*

Am Jur 2d, Divorce and Separation §§ 864 et seq.

See the annotations in the ALR3d/4th Quick Index under Divorce and Separation; Equitable Distribution.

trial court found. The trial court erred in considering the amounts plaintiff paid for temporary alimony and child support during the pendency of the divorce action as relevant to valuing the dental practice. The case was remanded for redetermination of the value of plaintiff's professional corporation and modification of the property division accordingly.

3. The trial court erred in ordering defendant to repay to a trust for the benefit of the children an amount of money which she had taken from the trust, since exclusive jurisdiction over proceedings concerning trusts is statutorily vested in the probate court. The Court of Appeals vacated the portion of the divorce judgment relating to the trust.

4. The trial court abused it discretion in ordering defendant to sell the gold, which the trial court awarded to defendant, unless she could assure the trial court she would be able to pay her attorney fees and support herself without a sale of the gold. The Court of Appeals reversed the portion of the divorce judgment requiring the sale of the gold.

5. The trial court did not err in valuing the jewelry it awarded to defendant. The trial court fixed the value of the jewelry based upon expert testimony.

6. The trial court did not err in not awarding silver, which the court determined to be lost, to either party.

7. Defendant's other claims of error were without merit.

Affirmed in part, reversed in part and remanded.

1. DIVORCE — DIVISION OF PROPERTY — APPEAL.

A trial court has great discretion in the adjustment of property rights in a divorce action; the Court of Appeals will not reverse or modify a property division unless convinced that it would have reached another result if it had occupied the position of the trial court.

2. APPEAL — FINDINGS OF FACT — COURT RULES.

Findings of fact made by a trial court sitting without a jury may not be overturned on appeal unless they are clearly erroneous (MCR 2.613[C]).

3. APPEAL — FINDINGS OF FACT — COURT RULES.

A finding of fact made by a trial court sitting without a jury is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed (MCR 2.613[C]).

4. DIVORCE — DIVISION OF PROPERTY — VALUATION OF MARITAL ASSETS.

Although alimony and child support obligations may be relevant

when a trial court is dividing property in a divorce proceeding, the value of an asset is not directly affected by the fact that a party is under a support obligation.

5. COURTS — PROBATE COURTS — JURISDICTION — TRUSTS.

Jurisdiction over trusts and the internal affairs of trusts is vested by statute in the probate court (MCL 700.21, 700.805; MSA 27.5021, 27.5805).

6. DIVORCE — DIVISION OF PROPERTY.

Although there may be circumstances where a trial court is justified in ordering the sale of a marital asset, such as where both parties, or neither, wish possession of an asset and it would be inequitable to give the asset to either, it would be an abuse of discretion for a trial court to order a sale of a marital asset where the parties stipulate as to who is to get possession of that asset, and where no creditor of either party petitions the court for a freeze of assets or petitions the court for a collection on a debt.

*Diane D. St. Claire,* for plaintiff.

*Prather & Harrington,* (by *James J. Harrington),* for defendant on appeal.

Before: SHEPHERD, P.J., and R. B. BURNS and R. L. TAHVONEN,* JJ.

R. B. BURNS, J. Defendant appeals from a 1984 judgment of divorce. She challenges the property valuation, child support award, and child custody provisions of the judgment. We reverse in part.

The parties were married in 1971 while plaintiff was a senior in dental school and defendant was in her last year of a dental hygiene program. Both parties graduated in April, 1972, and plaintiff soon thereafter set up a dental practice in Saginaw. Except for pregnancy leave, defendant worked part-time in plaintiff's office for most of the marriage.

Plaintiff testified that he and defendant had

---

* Circuit judge, sitting on the Court of Appeals by assignment.

numerous disagreements during the course of their marriage, primarily over the management of the dental practice, day-to-day activities, and finances. Prior to plaintiff's filing of the divorce complaint on November 27, 1981, defendant spent two or three weeks in Canada taking care of her parents' dog and, soon after her return, she left for Florida to visit her sister. During her absence, plaintiff discovered that defendant had withdrawn a large sum of money from their savings account and that property deeds, jewelry, and gold coins and bullion were missing from their safety deposit boxes. He also discovered that a bag of silver coins was missing from the marital home.

Defendant admits to taking some of the parties's gold holdings, but contends that she did so only with plaintiff's permission. She also admitted to selling the jewelry. However she denies taking the bag of silver.

The trial court valued the marital estate at $425,332.97, awarding half to each party in accordance with their stipulation. Defendant raises several claims of error, which we will address *seriatim.*

I

Valuation of plaintiff's professional practice.

Defendant contends that the trial court's finding on the valuation of plaintiff's dental practice was erroneous as it was based upon a "distress sale" or "going out of business" basis. She invites this Court to adopt the valuation method contained in Revenue Ruling 59-60 and apply that method to property divisions in divorce actions. *Rev Rul* 59-60, IRB, CB 1959-1, 237. We decline that invitation.

Revenue Ruling 59-60 was promulgated to address the problem of valuing the stock of closely held corporations for estate and gift tax purposes. Defendant urges this Court to be the first to apply the ruling to the valuation of professional corporations in divorce actions.

Michigan courts have been silent on the issue of the proper method of valuing professional practices. However, in *Handricks v Handricks,* 353 Mich 527; 91 NW2d 912 (1958), the Supreme Court affirmed a trial court's valuation of a tavern business based upon the expert testimony of a real estate broker.

The division of marital assets is within the discretion of the trial court and we will not reverse unless we are convinced that we would have reached another result had we occupied the position of the trial court. *Parrish v Parrish,* 138 Mich App 546; 361 NW2d 366 (1984). However, the valuation of an asset by the trial court is a finding of fact that we will reverse only if it is found to be clearly erroneous. MCR 2.613(C). See, also, *Cantor v Cantor,* 87 Mich App 485, 495; 274 NW2d 825 (1978) (decided under former rule GCR 1963, 517.1). Since the parties stipulated that the assets were to be divided evenly, our review is limited to determining if the trial court's valuation of the practice was clearly erroneous. Further, we will conclude that a ruling is clearly erroneous only if, after reviewing the entire record, we are left with the definite and firm conviction that a mistake has been committed. *Tuttle v Dep't of State Highways,* 397 Mich 44; 243 NW2d 244 (1976).

We believe that neither Revenue Ruling 59-60 nor any other single method should uniformly be applied in valuing a professional practice. Rather, this Court will review the method applied by the trial court, and its application of that method, to

determine if the trial court's valuation was clearly erroneous.[1]

In the case at bar, the trial court determined the value of plaintiff's practice, including equipment and good will but excluding accounts receivable, to be $110,000 plus an additional $30,487.42 representing the equity in the dental office building.[2] We do not believe this valuation to be unreasonable. Plaintiff's expert, Roberto Lopez, valued the practice at $109,019.29, including equipment, supplies, furniture, good will, and accounts receivable. Lopez is actively involved in the sale of dental practices and the valuation of those practices. Defendant's expert, a certified public accountant who has a number of dentists as clients, did not have similar valuation experience.

Although the trial court's valuation of the practice seems to favor plaintiff, it was within the range of values testified to by the various experts. Given the credentials of plaintiff's expert, we can-

[1] Our discussion should not be read as prohibiting trial courts from using Revenue Ruling 59-60 in their decisions if they find it helpful or as prohibiting parties from using it in presenting their cases. Since the trial court in the case at bar did not apply the ruling, we need not decide if doing so is erroneous. We only conclude that use thereof is not required.

[2] The trial court explained its evaluation on the dental practice as follows:

"This Court finds that the vaulation of Plaintiff's dental practice, known as Richard Kowalesky, D.D.S., P.C., including goodwill but excluding accounts receivable, is $110,000.00. This valuation has been arrived at by weighing the evidence and credibility of the witnesses, and attempting to strike a fair and equitable balance between the valuations of $109,019.29 and $279,500.00 given by plaintiff's and defendant's witnesses respectively. These valuations included a goodwill value by Plaintiff of $45,540.00, and a $122,000.00 value by Defendant; and a value of accounts receivable by Plaintiff of $31,541.26 and an accounts receivable value by Defendant of $83,500.00. This Court has not included accounts receivable in its valuation of the dental practice, because the receivable have been used to pay the debts and expenses of the corporation as well as Plaintiff's salary, and the Defendant has received temporary alimony and child support from the Plaintiff during the past two years while this action was pending."

not conclude that the trial court's finding in valuing the dental practice, except as discussed below, was clearly erroneous.

We do believe, however, that there are three areas in which the trial court erred in valuing the dental practice. First, the trial court failed to value the accounts receivable, stating that they were used to pay the debts and expenses of the corporation as well as plaintiff's salary. However, it is not clear whether the trial judge was merely using the receivables to offset existing debts of the corporation, including accrued salary, or whether the trial court was also considering future expenses and salary.

Generally speaking, the value of a business is its assets, less its liabilities. Since plaintiff was entitled to receive the accounts receivable, they represented an asset of the corporation. Similarly, any debts, including unpaid salary expenses, reduced the value of the corporation. In valuing the dental practice, the trial court should have determined the value of all assets, tangible and intangible, including good will and accounts receivable, and subtracted from that the amount of the outstanding liabilities of the corporation as of the date of valuation.

The second area in which the trial court erred was in considering the reduction Mr. Lopez opined of 40% of the value of the good will of the practice on the basis of a distress sale. There is nothing in the record to support the assumption that the plaintiff would discontinue his practice or that the staff would not stay on. Since it appears that plaintiff would continue the dental practice, the valuation of the practice should be the value of the practice to plaintiff as a going concern.

The third area in which the trial court erred was in considering the fact that plaintiff paid

temporary alimony and child support during the pendency of the action. This fact is not relevant to the value of the dental practice. Similarly, that some of the amounts collected from the accounts receivable went to pay the temporary support obligations is also irrelevant. Although support obligations may be relevant in dividing assets, a subject upon which we offer no opinion, the value of an asset is not directly affected by the fact that a party is under a support obligation. The parties stipulated that the assets were to be divided evenly. Thus, the trial court was limited to valuing the dental practice. The fact that plaintiff had to pay temporary support was not relevant to any matter before the trial court in valuing the marital assets.

Since the testimony of the witnesses differed widely as to the value of the accounts receivable,[3] we decline to make a valuation ourselves. Rather, we remand the case to the trial court for redetermination of the value of the plaintiff's professional corporation and a modification of the property division accordingly.

## II

### Whether the trial court improperly exercised jurisdiction over the Clifford trust.

During the course of the marriage, a Clifford trust[4] was established for the benefit of the chil-

---

[3] The valuations ranged from $31,541.26 to $83,500.

[4] We note that in a classic Clifford trust the reversionary interest is retained by the grantor. *Helvering v Clifford,* 309 US 331; 60 S Ct 554; 84 L Ed 788 (1940). In the case at bar, the reversionary interest belongs to the children. Thus, the term "Clifford trust" might not be entirely accurate. However, since the parties and the trial court refer to it as a Clifford trust, so shall we. The name placed on the trust is not important. Rather, as discussed below, the importance lies in the fact that it is a trust and the children possess the reversionary interest.

dren. According to plaintiff's testimony at trial, the children also had the reversionary interest in the trust. Defendant was the trustee of the trust and, following the filing of the divorce action, improperly removed $21,000 from the trust. The trial court ordered defendant to repay the trust from her share of the property settlement.[5] Defendant argues that the circuit court had no authority over the trust. We agree.

Jurisdiction over the internal affairs of trusts is vested by statute in the probate court. MCL 700.805; MSA 27.5805 provides in part as follows:

"(1) The probate court has exclusive jurisdiction of proceedings initiated by interested parties concerning the internal affairs of all trusts. Proceedings which may be maintained under this section are those concerning the administration and distribution of a trust, the declaration of rights, and the determination of other matters involving trustees and beneficiaries of a trust. These include proceedings to:

"(a) Appoint or remove a trustee.

"(b) Review trustees' fees and to review and settle interim or final accounts.

"(c) Ascertain beneficiaries, to determine any question arising in the administration or distribution of any

---

[5] The divorce judgment has the following provisions related to the Clifford trust:

"*CHILDREN'S CLIFFORD TRUST*

"IT IS FURTHER ORDERED AND ADJUDGED that pursuant to stipulation and agreement between the parties, the Clifford Trust shall be awarded in its entirety to the minor children of the parties, including but not limited to, all current monies, future income, assets, debentures, notes, and reimbursement by the parties as set forth in the above paragraph. Neither party shall have any further claim or interest in the Clifford Trust.

"IT IS FURTHER ORDERED AND ADJUDGED that all present and future monies in the Clifford Trust shall be deposited in either savings accounts or certificates of deposit, with the parties agreeing upon where said money shall be deposited; and further wherever said monies are deposited, the signatures of both parties, Plaintiff and Defendant, shall be required for the withdrawal of any of those monies."

trust including questions of construction of trust instruments, to instruct trustees, and to determine the existence or nonexistence of any immunity, power, privilege, duty, or right.

"(d) Release registration of a trust."

Exclusive jurisdiction over trusts by the probate court is also provided for in MCL 700.21; MSA 27.5021. See *In re Americana Foundation,* 145 Mich App 735; 378 NW2d 586 (1985).

Based upon this statutory authority, we find that the trial court lacked authority to exercise jurisdiction over the Clifford trust. Plaintiff, as grantor or on behalf of the beneficiary children, should have filed a petition in the probate court. We note, however, that a different result might have been reached had the reversionary interest been in one or both of the parties. Had such been the case, then the reversionary interest would have been a marital asset which the trial court could have allocated to one or both of the parties and, perhaps, taken action to protect. However, we leave for a future case the determination of the authority of a circuit judge to protect the reversionary interest of a trust in a divorce action.

Before concluding this issue, we note that the case relied upon by plaintiff, *McLain v McLain,* 108 Mich App 166; 310 NW2d 316 (1981), is not applicable to the case at bar. *McLain* involved the question of whether a bank account was a valid trust or a marital asset. We remanded the case to the trial court to determine if it was a marital asset and, if so, to divide it accordingly. Since it is not disputed that there exists a valid Clifford trust in the case at bar, we are not faced with the question addressed in *McLain.*

For the reasons stated above, that portion of the divorce judgment relating to the Clifford trust is vacated.

### III

Forced sale of the gold, valuation of jewelry, and allocation of silver assets.

#### A. The gold.

The trial court found that the parties owned 163 ounces of gold and awarded that gold to defendant. However, the trial court ordered the gold to be sold unless defendant was able to assure the trial court that she would be able to pay her attorney fees and support herself without a sale of the gold.[6] We find that the trial court abused its discretion in so ordering.

Defendant is an adult in her early thirties and there is no evidence to suggest that she is not competent to handle her own business affairs. We do not believe that the trial court's order is justified even in view of defendant's prejudgment activities in secreting away assets and in invading the Clifford trust corpus. None of defendant's creditors petitioned the circuit court to protect their interests by freezing defendant's assets. Moreover, the circuit court went beyond the mere freezing of

[6] The judgment provided as follows:

"IT IS FURTHER ORDERED AND ADJUDGED that the Defendant mother shall be awarded all of the gold owned by the parties which the Court finds to be in the amount of 163 ounces. The Defendant shall be given the option to sell or retain said gold and must make the decision within thirty (30) days. If the Defendant wishes to retain said gold and not sell it, the value of the gold is placed at the sum of Sixty-Three Thousand Seven Hundred Forty-Nine and 30/100 Dollars ($63,749.30). If the Defendant does not wish to sell the gold, she must show to the Court that by not selling the gold she has sufficient monies between the property settlement, child support and alimony to pay all of her attorney fees, support herself and the two children.

"If the Defendant decides to sell the gold, the proceeds of the sale shall be placed in the Trust account of the Defendant's attorney to be held in trust until the terms of the property settlement are carried out. Any increase or decrease in the value of the gold from the price set of Sixty-Three Thousand Seven Hundred Forty-Nine and 30/100 Dollars ($63,749.30) shall be shared equally by the parties."

assets to protect creditors and ordered the gold sold, even though no creditor had petitioned for a collection on a debt owed by defendant.

The selling of the gold constituted an investment decision which would incur costs on disposal, including selling costs and the triggering of a taxable event, as well as being an investment decision as to the future price of gold.[7] Rather than allowing defendant to make that investment decision, the trial court attempted to make it on her behalf.

Therefore, we conclude that it was an abuse of discretion for the trial court to order the sale of the gold. Although there may be circumstances where a trial court is justified in ordering the sale of a marital asset, such as where both parties, or neither, wish possession of an asset and it would be inequitable to give the asset to either, this is not the case here. Plaintiff does not argue that the gold should have been awarded to him. The trial court's decision to order the sale of the gold is reversed and that portion of the judgment requiring the sale of the gold is vacated.

### B. Valuation of the jewelry.

The trial court awarded defendant certain items of her jewelry, fixing the value at $7,500. in actuality, defendant had sold that jewelry prior to trial for $1,020. Defendant contends that the trial court erred in its valuation, which had the effect of penalizing defendant for the sale.

We agree with the trial court's disposition of this issue. Defendant sold the jewelry to a private individual at a price apparently based upon scrap metal prices. The sale violated an injunction against the disposal of property. The value set by

---

[7] Plaintiff argues on appeal that these costs and taxes would be minimal. We do not believe that the amount of the costs and taxes is relevant. Defendant should make the initial determination of whether to incur these costs in satisfying her debts and expenses.

the trial court was slightly less than the minimum value established by plaintiff's expert. The estimates of the replacement value of the jewelry ranged between $10,000 and $13,735.

The trial court fixed the value of the jewelry based upon expert testimony. We believe that the fact that defendant sold the jewelry at scrap metal prices is irrelevant. The disposal was improper and reflected poor financial judgment. The trial court's resolution of the issue placed defendant in the same position she would have been in had she not violated the injunction. We believe that the trial court properly exercised its discretion in placing the financial burden of violating the injunction upon defendant.

That portion of the judgment relating to the jewelry is affirmed.

### C. The silver assets.

The trial court awarded $900 worth of silver to plaintiff and found that there was an additional $8,190 worth of silver, but that the silver was "lost". The court did not allocate the "lost" silver to either party, but ruled that it was to be divided evenly if ever found.

Since the finding that the silver was lost is a finding of fact, we will review that ruling to determine if it is clearly erroneous. We find that it is not.

Although both parties acknowledge the existence of the sliver, each denies possession and argues that the other removed it from the marital home. Although defendant's activities in secreting away marital assets and in invading the Clifford trust outshadow any such conduct by plaintiff, and suggest that defendant took possession of the silver, we are not quite ready to make that finding. In view of the fact there is no concrete evidence

linking either party to the silver and any such determination would have to be reached based upon the circumstantial evidence of the parties' conduct, we cannot conclude that the trial court's determination is clearly erroneous.

Further, we note that the trial court did not fail to divide the silver assets. It was stipulated that all assets were to be divided evenly and the trial court ordered the silver to be split if ever found. The trial court merely declined to award sole possession to either party or determine which party possessed the silver. We believe the trial court's solution is adequate until such time as one party can establish the whereabouts of the silver. At such time, that party may, of course, petition the trial court for enforcement of the judgment.

We have considered defendant's other claims of error and find them to be without merit.

The decision of the trial court is reversed in part and the case is remanded to the trial court for futher proceedings consistent with this opinion. We do not retain jurisdiction. No costs, neither party having prevailed in full.

ADDENDUM

Subsequent to oral argument in this case, the trial court entered an order modifying the custody provisions of the divorce judgment and granted sole custody to defendant. Since this issue is not properly before this Court, we render no opinion on that order.