*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DOUGLAS R. MAREK,

    Plaintiff/Counterdefendant-Appellee,

v

CHRISTEN M. MAREK,

    Defendant/Counterplaintiff-Appellant.

UNPUBLISHED
November 17, 2025
10:48 AM

No. 369599
Clinton Circuit Court
LC No. 2023-030982-DO

Before: GADOLA, C.J., and BOONSTRA and SWARTZLE, JJ.

PER CURIAM.

Defendant, Christen Marek, appeals the judgment of divorce as it concerns the valuation of marital property. Defendant argues that the trial court clearly erred in valuing plaintiff's business and a building plaintiff owns at $0 because there were positive assets and equity associated with both holdings. We disagree with defendant and therefore affirm.

## I. FACTS

Plaintiff, Douglas Marek, and defendant, Christen Marek, were married in 2015. On January 12, 2023, plaintiff filed for divorce, and defendant filed a counter-complaint for divorce shortly after. Plaintiff is a self-employed owner of multiple businesses. Plaintiff's income from these business ventures became the parties' primary source of income during the marriage. Defendant is also a self-employed business owner and massage therapist for her business, Integrative Massage, LLC. Plaintiff's income was mostly from WebLocal, Inc. (WebLocal), an S corporation owned solely by plaintiff that does online marketing and website development. Before trial, the parties entered into a stipulation that divided their personal property. As to the marital property, defendant asserted plaintiff's businesses should be awarded to him, but that the value of the businesses should be divided equitably between the parties. Plaintiff argued he should receive 60% of the marital assets, and defendant should receive 40% because she did not contribute as much to the marital estate as plaintiff did.

The trial court issued its judgment of divorce following a four-day bench trial held on non-consecutive days between August and December 2023. The judgment of divorce awarded WebLocal, Washington Square at Kalamazoo, LLC, Marekco, Inc., and other businesses owned

by plaintiff to plaintiff. Defendant was awarded her massage business, Integrative Massage, LLC. The trial court found that the total marital estate should be split 50-50 between the parties, with plaintiff making a one-time payment to defendant of $134,391.75. The trial court also awarded spousal support for defendant in the amount of $1,500 per month for one year following the divorce.

At trial, plaintiff introduced appraisals of his businesses and assets owned by those businesses. One of plaintiff's business assets included a two-story building in downtown Lansing on the corner of Washington Square and Kalamazoo Street (Washington Square building), owned by Washington Square at Kalamazoo, LLC, and managed by Marekco, Inc., a pass-through entity solely owned by plaintiff to collect rents and pay the building expenses. Plaintiff bought the building in March 2020, with the intent of creating office space for WebLocal and renting out the residential apartments upstairs. However, the Covid-19 pandemic forced his WebLocal employees to continue to work remotely, so WebLocal never occupied the building. The appraisal valued the Washington Square building at $1,420,000, effective December 31, 2021. Plaintiff testified that he could not sell the building for the appraised value because there were fewer state workers in office after the pandemic, which contributed to a decrease in downtown foot traffic, and a decrease in the value of the building. Also, two of the business tenants, Subway and Optic LED Grow Lights, closed sometime after the appraisal was done. Currently, there is one business tenant, Strange Matter Coffee, and several residential tenants. Plaintiff testified that the total rent he collects from tenants every month does not cover the building expenses, so it operates at a loss.

The Washington Square building was subject to six outstanding loans: (1) a mortgage with a balance of $1,137,338; (2) a loan for HVAC and roof repairs with a balance of $37,374; (3) a loan from the Small Business Association (SBA) with a balance of $9,730.18; (4) a loan from plaintiff's other company, D. Marek's Online, LLC, with a balance of $16,500; (5) another loan from D. Marek's Online, LLC, with a balance of $3,300; and (6) a loan from Marekco with a balance of $26,400, totaling about $1.26 million in outstanding debt at the time of trial. Plaintiff argued the trial court should subtract the debt from the appraised value to arrive at a value of about $156,000. Plaintiff then argued if the building were to be sold, after considering realtor costs and fees, the value would be closer to $0. On December 31, 2022, a certified public accountant (CPA) valued WebLocal at $0. The valuation considered WebLocal's assets, $340,000 in a bank account, and its debts, a $516,767.13 SBA loan, and $37,361 in credit card debt.

Following trial, the trial court gave its oral ruling on the disputed matters. The trial court found that the values reflected in the chart of assets and liabilities in plaintiff's trial summary most closely reflected the evidence and testimony, so the trial court based its ruling on those values. The trial court believed the plaintiff presented "extremely credible testimony regarding what the values of those businesses were as well as extensive documentation, tax records, and assets and liabilities of those businesses." While the trial court acknowledged defendant presented some evidence that plaintiff's businesses should be valued higher, the court found that evidence to be more speculative than the evidence provided by plaintiff. Each party was awarded their respective businesses and all assets and liabilities associated with those businesses. Defendant now appeals.

## II. DISCUSSION

Defendant argues the trial court clearly erred in valuing WebLocal and the Washington Square building at $0, because both continued to generate income and had remaining equity and assets after deducting the debts. We disagree.

## A. STANDARD OF REVIEW

The trial court's underlying findings of fact in a judgment of divorce are reviewed for clear error. *Sparks v Sparks*, 440 Mich 141, 151; 485 NW2d 893 (1992). "A finding is clearly erroneous if, after a review of the entire record, the reviewing court is left with a definite and firm conviction that a mistake has been made." *McNamara v Horner*, 249 Mich App 177, 182-183; 642 NW2d 385 (2002). If there is no factual error, this Court must decide whether the judgment is fair and equitable in light of those facts. *Sparks*, 440 Mich at 151-152. Judgments of divorce should be affirmed on appeal unless the appellate court is left with the firm conviction that the property division was inequitable. *Id*. at 152.

## B. ANALYSIS

The trial court did not clearly err in finding WebLocal and the Washington Square building should be valued at $0 after considering all of the evidence presented at trial. Assets earned by a spouse during the marriage are part of the marital estate. *McNamara*, 249 Mich App at 183. Marital assets are subject to division between the parties. *Id*. "The goal in distributing marital assets in a divorce proceeding is to reach an equitable distribution of property in light of all the circumstances." *Loutts v Loutts*, 298 Mich App 21, 35; 826 NW2d 152 (2012) (citation and quotation marks omitted). In reaching an equitable division of the marital estate, the trial court is to consider the following factors if relevant under the circumstances: (1) duration of the marriage, (2) contributions of the parties to the marital estate, (3) age of the parties, (4) health of the parties, (5) life status of the parties, (6) necessities and circumstances of the parties, (7) earning abilities of the parties, (8) past relations and conduct of the parties, and (9) general principles of equity. *McNamara*, 249 Mich App at 185, citing *Sparks*, 440 Mich at 159-160.

"Generally speaking, the value of a business is its assets, less its liabilities." *Kowalesky v Kowalesky*, 148 Mich App 151, 157; 384 NW2d 112 (1986). If the intent is to continue operating the business post-divorce, the business should be valued as a going concern. *Id*. Expert testimony is not required to determine the value of a marital asset. See *Lee v Lee*, 191 Mich App 73, 76; 477 NW2d 429 (1991). The parties can testify as to their opinion regarding its value. *Id*.

The trial court divided the marital estate equally between the parties after considering all of the *McNamara* factors. See *McNamara*, 249 Mich App at 185. Defendant argues the trial court erred in finding WebLocal was worth $0 because it continued to generate an income for plaintiff of "a quarter million dollars a year," and had $340,000 in a bank account. Defendant asserts WebLocal was valued according to a "fire sale" approach, because the CPA failed to consider the value of the business as a "going concern." This argument is without merit. The valuation report clearly shows that WebLocal was valued on a "going concern basis as opposed to an orderly liquidation basis." The valuation accounted for the business's assets, including $340,000 in a bank

account, and its debts, which included $520,000 in "long-term debt," and $65,000 in debt pursuant to loans from shareholders. When subtracting the debts from the assets, the CPA concluded WebLocal was worth $0. See *Kowalesky*, 148 Mich App at 157. Defendant does not provide an alternative valuation or point to any specific deficiency in the expert valuation plaintiff provided. Further, defendant's contention that plaintiff makes a quarter of a million dollars per year from WebLocal is not supported by the record. Plaintiff's tax returns showed his income to be: $107,123 in 2020; $34,078 in 2021; and $59,073 in 2022. Therefore, we cannot find the trial court erred in adopting the $0 valuation when that value was clearly supported by the record evidence. See *id*.

Defendant also asserts the trial court erred in valuing the Washington Square building at $0 because the building had at least $150,000 in equity remaining after debts were subtracted. While this is true, the trial court properly considered other factors in determining the building was worth nothing. The appraisal indicated the building had a market value of $1,420,000 in 2021. Plaintiff and defendant both agreed that the businesses and the business assets should be valued after subtracting any debts. Plaintiff provided documentation of all outstanding loans on the building, totaling about $1,260,000 in debt. Plaintiff then argued, after considering realtor costs and fees, the value would be closer to $0 if it were to be sold. Plaintiff also testified that the appraisal was done before Subway, its primary business tenant, left the building. Thus, the value of the building was most likely less than the appraisal indicated. The evidence showed that the rental income did not cover all of the building's expenses. Plaintiff further testified that the building would need repairs soon because there were significant cracks in the foundation. The trial court credited this testimony and awarded the building to plaintiff without dividing any remaining value between the parties. The trial court can credit the parties' opinion testimony regarding the value of marital assets. *Lee*, 191 Mich App at 76. Here, plaintiff provided an expert appraisal as well as plaintiff's own opinion testimony and documentation to support his contention the building's value was less than what the appraisal concluded. Upon review of the entire record, this Court finds that the trial court did not clearly err in finding the building's value was $0 after considering all of the evidence presented at trial. *Sparks*, 440 Mich at 151-152.

Affirmed.

/s/ Michael F. Gadola
/s/ Mark T. Boonstra
/s/ Brock A. Swartzle